## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**FEDERAL TRADE COMMISSION**,

        Plaintiff,

        v.

**FINANCIAL EDUCATION SERVICES, INC.,** *et al.*,

        Defendants.

Case No. 2:22-cv-11120

Hon. Bernard A. Friedman

## MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND PROFESSIONAL'S FEES AND COSTS

The Temporary Receiver, Patrick A. Miles, Jr. ("Receiver"), by and through its undersigned counsel, hereby submits its Motion for Order Approving and Authorizing Payment of Receiver's and Professional's Fees and Costs from Inception of Receivership. For the reasons stated in the accompanying Brief in Support and attachments hereto, including the Declaration of Patrick A. Miles, Jr., the Receiver respectfully requests that the Court grant this Motion in its entirety and approve and authorize for payment the fees and expenses of the Receiver, Receiver's counsel, and professionals working at the direction of the Receiver.

On May 25, 2022, on motion by the Federal Trade Commission ("FTC"), the Court (among other things) entered the appointment of Mr. Miles as Receiver in this

action. On June 30, 2022, the Court held a hearing on an order to show cause why a preliminary injunction should not issue against Defendants. On the record, the Court denied the FTC's motion for preliminary injunction, and directed the parties to submit an order converting the Receiver to a court-appointed monitor. The FTC and Defendants submitted a proposed order on July 11, 2022, with input from Mr. Miles, which in part proposes to terminate the receivership and appoint Mr. Miles as Monitor pursuant to the Court's directive. As of this filing, the order has not been entered. Notwithstanding the conversion of the receivership to a monitorship, Mr. Miles files this instant Motion as the Receiver, and the instant Motion concerns fees incurred by the Receiver, the Receiver's counsel, and professionals working at the direction of the Receiver.

The Receiver has conferred with counsel for the FTC concerning the Receiver's request for the payment of fees and costs as outlined herein. The FTC's counsel represented that the FTC does not oppose the Receiver's request.

WHEREFORE, the Receiver respectfully requests that the Court grant this Motion in its entirety and approve and authorize for payment the fees and expenses of the Receiver, Receiver's counsel, and professionals working at the direction of the Receiver, to be paid from the Corporate Defendants' assets.

Dated:  July 13, 2022                    BARNES & THORNBURG LLP

/s/Anthony C. Sallah
David A. Hall (P81426)
Anthony C. Sallah (P84136)
171 Monroe Ave NW, Suite 1000
Grand Rapids, Michigan 49503
Phone:  (616) 742-3930
Facsimile:  (616) 742-3999
David.Hall@btlaw.com
Anthony.sallah@btlaw.com
*Attorneys for Temporary Receiver
Patrick A. Miles, Jr.*

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

Whether the Court should enter an order approving and authorizing for payment the fees and expenses of the Receiver, Receiver's counsel, and professionals working at the direction of the Receiver, to be paid from the Corporate Defendants' assets as requested herein.

Response: Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

- *Securities and Exchange Commission v. Elliott*, 953 F. 2d 1560 (11th Cir. 1992)

- *Gaskill v. Gordon*, 27 F.3d 248 (7th Cir. 1994)

- *Gordon v. Dadante*, 804 F. App'x 317 (6th Cir. 2020)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FEDERAL TRADE COMMISSION**,

Plaintiff,

v.

**FINANCIAL EDUCATION
SERVICES, INC.,** *et al.*,

Defendants.

Case No. 2:22-cv-11120

Hon. Bernard A. Friedman

## BRIEF IN SUPPORT OF MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND PROFESSIONAL'S FEES AND COSTS

I.     INTRODUCTION

This lawsuit was commenced by the Federal Trade Commission ("FTC") on May 23, 2022 with a Complaint for Permanent Injunction, Monetary Relief, and Other Relief (the "Complaint") (ECF No. 1) against Financial Education Services, Inc., United Wealth Services, Inc., VR-Tech, LLC, VR-Tech Mgt, LLC, CM Rent Inc., Youth Financial Literacy Foundation (the "Corporate Defendants"), as well as Parimal Naik, Michael Toloff, Christopher Toloff, and Gerald Thompson (the "Individual Defendants").[1]

---

[1] The Corporate Defendants and the Individual Defendants are collectively referred to as the "Defendants."

3

As described in the Complaint, the FTC alleges that Defendants, since at least 2015, have operated an unlawful credit repair scam that has deceived consumers. (ECF No. 1, PageID.2, ¶ 2). The FTC alleges that Defendants use a network of sales agents to "falsely claim they can improve consumers' credit scores by removing all negative items from their credit reports and adding credit building products." (*Id*.). The FTC also alleges that the Defendants market an investment opportunity encouraging consumers to become agents and then recruit other consumers to purchase Defendants' credit repair services, contending it is an illegal pyramid scheme. (*Id*. at PageID.3, ¶ 3).

The Receiver became temporary receiver under the Court's Temporary Restraining Order ("TRO") entered on May 24, 2022. (ECF No. 10). Under the TRO, the Receiver became the Temporary Receiver over the "Receivership Entities," defined to include the Corporate Defendants "as well as any other entity that has conducted any business related to Defendants' credit repair services or investment opportunity, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant." (ECF No. 10, PageID.2238-38, 2242).

As set forth below and in the First Interim Report of Temporary Receiver (the "Receiver's Report") (ECF No. 55-1), one day after entry of the TRO, the Receiver implemented the immediate access provisions of the TRO (Paragraph XIII) by

4

taking possession of the primary offices of the Corporate Defendants and taking various actions as authorized by the TRO. Under Section XIX of the TRO, the Receiver and all personnel hired by the Receiver, including counsel, are entitled to "reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities." (ECF No. 10, PageID.2271). Paragraph XIX requires the Receiver to submit its first request for such reasonable compensation no more than sixty days after entry of the TRO. (*Id*.).

As evidenced by the detailed billing records which accompany the Declaration of Patrick Miles in support of the Motion ("Miles Declaration") attached as **Exhibit A**, the initial period of this receivership, like the initial period of almost all equity receiverships, was marked by the need for the Receiver to render extensive and broad services, including, among other things gaining possession and control of the records of the Corporate Defendants, developing a thorough understanding of the Defendants' businesses, operations, and assets, addressing immediate needs to stabilize the businesses pending the Court's hearing on a preliminary injunction, communicating extensively with counsel for the FTC and the Defendants (including coordinating access by counsel to Defendants' business records for review and use by counsel in connection with preparations for the preliminary injunction hearing),

communicating with financial institutions in order to gain control of the assets of the receivership estate, conducting extensive interviews, and reviewing business and financial related documentation. The services rendered also included preparing the Receiver's Report to the Court in order to aid the Court in more fully understanding the nature of the Defendants' business operations and report to the Court the progress of the receivership and attending the preliminary injunction hearing. The initial period was made more challenging given the numerous business entities at issue, their complex business structure and the interplay between those entities, and the various types of principal products that those entities offer, both to independent sales agents and to customers.

The services of the Receiver, its counsel, and those of Riveron RTS, LLC ("Riveron"), the Receiver's financial advisor, are summarized separately below and described in the detailed billing records attached as exhibits to the Miles Declaration.

## II.   SUMMARY OF THE SERVICES OF THE RECEIVER, THE RECEIVER'S COUNSEL, AND PROFESSIONALS

### A.   Fees and Costs for the Receiver and Riveron.

The Receiver seeks payment of the Receiver's and its counsel's fees and costs as set forth in the Receiver invoices attached to the Miles Declaration as Exhibit 1. The Receiver also seeks payment for fees and costs incurred by Riveron. The fees and costs set forth in invoices from the Receiver and its counsel cover the time period from May 24, 2022, the day the TRO was entered, through June 2022. The fees and

costs set forth in the invoices from Riveron cover the time period from May 24, 2022 through July 3, 2022. The period from May 24, 2022 through July 3, 2022 is referred to herein as the "Reporting Period."

During the Reporting Period, the Receiver has incurred fees for the Receiver and Riveron in the total amount of $190,021.62 ($60,193.12 on behalf of the Receiver and $129,828.50 on behalf of Riveron).

The Receiver commenced his work on May 24, 2022 as he began to prepare to gain control of the Corporate Defendants' business operations and assets. The Receiver commenced his work by reviewing the draft TRO and receivership appointment material provided by the FTC, researching and reviewing background on the Corporate Defendants and conferring with the FTC on the immediate access plan for entry and to take control of the Corporate Defendants. As set forth in the Receiver's report, the Receiver was present and took possession and control of the primary offices of the Corporate Defendants at approximately 1:00 p.m. on Wednesday, May 25, 2022.

At the time the Receiver commenced his work on May 24, 2022, he engaged the financial services of Riveron to assist in the day-to-day management of the Corporate Defendants' business and assets. From the entry of the TRO through the Preliminary Injunction Hearing held on June 30, 2022, the Receiver, individually and through Riveron, took steps to determine the scope and location of the assets of

the Corporate Defendants and preserve and maximize such assets. In doing so, the Receiver and Riveron, at the Receiver's direction, took control of the Corporate Defendants' bank accounts, terminated at least one lease with an ongoing analysis of the remaining business leases, and identified leased vehicles and terminated such leases. Additionally, the Receiver, individually and through Riveron, determined it was in the best interest of the Corporate Defendants to make certain payments on accrued expenses, including payroll, health insurance and welfare benefits, rent and utilities, totaling $263,920.53. The Receiver and Riveron, at the Receiver's direction, also coordinated with employees who were temporarily out of work following the May 24, 2022 possession of control by the Receiver.

In addition, the Receiver also undertook an analysis to more fully understand the nature and scope of the Corporate Defendants' business operations, and to determine the viability of their continued legal operation of the businesses. As part of this analysis, the Receiver conducted a large number of interviews with the Corporate Defendants' employees from various departments. The Receiver also performed an in-depth review of the Corporate Defendants' compliance policies and procedures, and whether those policies and procedures are continuously implemented. Extensive effort was undertaken to consolidate and summarize the numerous business records collected by the Receiver to prepare the Receiver's

Report for the Court. The Receiver's analysis remains ongoing and has become even more imperative given the transfer of this case from a receivership to a monitorship.

### B.      Fees and Costs for the Receiver's Counsel, Barnes & Thornburg.

The Receiver also seeks payment of its counsel's fees and costs as set forth in the detailed billing records of Barnes & Thornburg, attached to the Miles Declaration as Exhibit 1. During the Reporting Period, the Receiver incurred fees to its counsel of $106,516.90 and costs of $1,606.76.

Barnes & Thornburg played an important role in helping preserve and manage the assets of the Corporate Defendants as many of the financial institutions were unclear of their responsibilities under the TRO. Barnes & Thornburg reviewed the TRO to ensure that the Receiver was complying with its terms and to inform various financial institutions of their obligations thereunder. It filed a miscellaneous action in the United States District Court for the Middle District of Florida, filing certified copies of the Complaint and TRO pursuant to 28 U.S.C. 754, to enable the Receiver to obtain control over receivership property located in that jurisdiction.

Barnes & Thornburg addressed numerous issues with financial institutions regarding the authority of the Receiver and in order to gain access to funds needed to pay essential expenses incurred by the Corporate Defendants prior to the issuance of the TRO. It prepared letters to various financial institutions, payroll and other third party service providers regarding the authority of the Receiver and their

obligations under the TRO and corresponded with the landlords for multiple leased locations of various Corporate Defendants regarding payment and status of leases. Counsel also assisted the Receiver with the analysis of the ability to operate the business of the Corporate Defendants in a legal manner and to comply with all applicable consumer protection laws.

Barnes & Thornburg also reviewed, helped prepare and filed the Receiver's Report. The Receiver's Report contains a detailed summary of the Receiver's actions following entry of the TRO, summary and analysis of the Corporate Defendants' assets, summary and analysis of the Corporate Defendants' business operations (including products offered, contracts with customers and agents, compensation plans, and legal compliance).

Barnes & Thornburg also appeared on behalf of the Receiver at the preliminary injunction hearing and participated in multiple telephone conferences with the parties in this matter and the Court. Counsel also reviewed and represented the Receiver in negotiations with Defendants' counsel as well as the FTC with regard to a modify order per the Court's request. Communications between Barnes & Thornburg and Defendants' counsels also included communications concerning the unfreezing of personal, unrelated assets, medical insurance and the logistics and scheduling of the preliminary injunction hearing.

10

## III. THE FEES AND COSTS OF THE RECEIVER AND ITS COUNSEL ARE REASONABLE AND SHOULD BE PAID AS REQUESTED

It is a tenet of receivership law that expenses of administration incurred by the receiver, including those of the receiver, his or her counsel, and others employed by him or her, constitute priority expenses for which compensation should be paid from the assets of the receivership. As explained in the leading treatise *Clark on Receivers*:

> The obligations and expenses which the court creates in its administration of the property are necessarily burdens on the property taken possession of, and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. The appointing court pledges its good faith that all duly authorized obligations incurred during the receivership shall be paid.

2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers* § 637, p. 1052 (3rd ed. Rev. 1992).

During the pendency of the receivership, the Receiver was an officer of the Court charged with a myriad of duties under the Court's TRO, some of which have no relationship to recovery of assets or increasing the funds available for distribution to creditors. Because of the nature of the administrative and other services required in receiverships, the benefit a receiver confers on receivership property cannot be determined based solely on the increase or decrease in the value of property in the receiver's possession. As the Court stated in *Securities and Exchange Commission v. Elliott*, 953 F. 2d 1560, 1577 (11th Cir. 1992):

11

> [I]t is sometimes difficult to ascertain what type of benefits a receiver
> has bestowed on receivership property … [A] benefit to a secured party
> may take more subtle forms than a bare increase in monetary value.
> Even though a receiver may not have increased, or prevented a decrease
> in, the value of the collateral, if a receiver reasonably and diligently
> discharges his duties, he is entitled to compensation.

The Court's "award of a receiver's compensation is … firmly within its discretion." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994); *Gordon v. Dadante*, 804 F. App'x 317, 324 (6th Cir. 2020) ("Compensation awarded to a Receiver is, like the issue of attorney's fees, reviewed for abuse of discretion."). The "Court's primary concern in awarding professional fees is that the fees be reasonable." *Commodity Futures Trading Comm'n v. Aurifex Commodities Rsch. Co.*, No. 1:06-CV-166, 2007 WL 2481015, at *1 (W.D. Mich. Aug. 29, 2007) (involving receiver's request for professional fees). The Court may review whether the services were "actually and necessarily performed … that the expenses billed were actually and necessarily incurred … and that the amount of the fees and expenses is reasonable as to the hourly rates charged, the hours expended, and the expenses billed." *Quilling v. Trade Partners, Inc.*, No. 1:03-CV-236, 2008 WL 4287824, at *1 (W.D. Mich. Sept. 17, 2008). The Court may evaluate supporting documentation, such as "detailed invoices which identify in descriptive detail the tasks performed, who performed each task, the person's position and billing rate, and how much time was devoted to each task." *F.T.C. v. Fortune Hi-Tech Mktg., Inc.,* No. CIV.A. 13-123,

2013 WL 4495829, at *3 (E.D. Ky. Aug. 20, 2013) (holding that receiver established prima facie case for reasonableness of attorney's fees).

The Receiver and its professionals have performed extensive and wide-ranging tasks since the Court's appointment of the Receiver. This Motion and the accompanying Miles Declaration establish that the Receiver, its members, staff and professionals rendered reasonable and necessary services for the receivership estate. Furthermore, during the preliminary injunction hearing, this Court complemented the work of the Receiver and his staff, noting the amount of work performed. (ECF No. 73, PageID.5479). The Court also noted that the Receiver "did a fabulous job … in putting things together." (*Id*. at PageID.5475). Much of the work performed by the Receiver and its professionals were of necessity following the Court's appointment and were not necessarily focused on the monetization of receivership assets. This includes gaining a thorough understanding of the Corporate Defendants' wide-ranging and complex business operations, and the interplay between the various corporate entities, which will continue to help inform Mr. Miles as he transitions to a court-appointed monitor. The Receiver respectfully submits the fees are reasonable in light of the services rendered and results obtained to date, and that the fees and expenses requested should be awarded in their entirety.

As set forth in the Miles Declaration and the Receiver's Report, there are sufficient assets in the receivership estate to allow for payment of all fees and

expenses requested. At the time the Receiver implemented the immediate access provisions of the TRO, there were funds on hand of approximately $12,347,264.54 in two bank accounts maintained by the various Corporate Defendants. (ECF No. 55-1, PageID.4272).

## IV.   CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court grant this Motion in its entirety and approve and authorize for payment the fees and expenses of the Receiver, Receiver's counsel, and professionals working at the direction of the Receiver, to be paid from the Corporate Defendants' assets.

Dated:  July 13, 2022

BARNES & THORNBURG LLP

*/s/Anthony C. Sallah*
David A. Hall (P81426)
Anthony C. Sallah (P84136)
171 Monroe Ave NW, Suite 1000
Grand Rapids, Michigan 49503
Phone:  (616) 742-3930
Facsimile:  (616) 742-3999
David.Hall@btlaw.com
Anthony.sallah@btlaw.com
*Attorneys for Temporary Receiver*
*Patrick A. Miles, Jr.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 13, 2022 a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

Dated: July 13, 2022           BARNES & THORNBURG LLP

                                  */s/ Anthony C. Sallah*
                                  Anthony C. Sallah (P84136)
                                  171 Monroe Ave NW, Suite 1000
                                  Grand Rapids, Michigan 49503
                                  Phone: (616) 742-3930
                                  Facsimile: (616) 742-3999
                                  erika.weiss@btlaw.com
                                  *Attorneys for Temporary Receiver Patrick A. Miles, Jr.*

15