# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**FEDERAL TRADE COMMISSION**,

|  |  |
|---|---|
| Plaintiff, | Case No. 2:22-cv-11120 |
|  | Hon. Bernard A. Friedman |
| v. |  |
| **FINANCIAL EDUCATION SERVICES, INC.**, ***et al.***, |  |
| Defendants. |  |

## DECLARATION OF PATRICK A. MILES, JR. IN SUPPORT OF MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF RECEIVER'S AND PROFESSIONAL'S FEES AND COSTS

I, Patrick A. Miles, Jr., declare as follows:

1.      I am an attorney at law duly licensed to practice before all courts of the State of Michigan and the United States District Court for the Eastern District of Michigan. I am currently a partner in the firm of Barnes & Thornburg LLP ("Barnes & Thornburg"). I am the former United States Attorney for the Western District of Michigan, serving in that role from July 2012 to January 2017 by appointment of President Barack Obama.

2.     I have personal knowledge of the matters set forth in this declaration, and if I were called upon to testify as to these matters I could and would competently testify thereto.

3.     In my individual capacity and not as a partner of Barnes & Thornburg, I was appointed as temporary receiver ("Receiver") in this action under the Court's Temporary Restraining Order ("TRO") entered on May 24, 2022. Under the TRO, I became the temporary receiver over the "Receivership Entities," defined under the TRO to include the Corporate Defendants "as well as any other entity that has conducted any business related to Defendants' credit repair services or investment opportunity, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant."

4.     In accordance with Section XXI of the TRO, on June 28, 2022, with the assistance of my counsel in this action from Barnes & Thornburg and professionals from my financial advisor Riveron RTS, LLC ("Riveron"), I authored and filed in the action the First Interim Report of Temporary Receiver (the "Receiver's Report"). The Receiver's Report describes the actions taken by me and those working at my direction following the Court's appointment of me as receiver.

5.     The Receiver seeks payment of the fees and costs incurred by me and my counsel beginning from the time of appointment of the Receiver (May 24, 2022)

2

through June 2022. Furthermore, the Receiver seeks the payment of the fees and costs incurred by Riveron, my financial advisor, during the period of the Court's appointment of the Receiver through July 3, 2022. The period from May 24, 2022 through July 3, 2022 is referred to herein as the "Reporting Period."

6.     As set forth in the detailed billing records attached as **Exhibit 1**, during the Reporting Period I incurred fees and costs totaling $60,193.12 from May 24, 2022 to June 30, 2022. As set forth in the detailed billing records attached as **Exhibit 2**, during the Reporting Period my counsel from Barnes & Thornburg incurred fees and costs totaling $108,123.66 from May 24, 2022 to June 30, 2022. The billing records attached as Exhibit 2 contain separate invoices and time entries for work performed in May 2022 and June 2022. All of the billing records submitted by me and Barnes & Thornburg itemize and detail the hours spent and the work performed by myself, and those attorneys and paralegals rendering services on this matter. Additionally, as set forth in the detailed billing records attached as **Exhibit 3**, during the Reporting Period my financial advisors from Riveron incurred fees and costs totaling $129,828.50 for professional services.

7.     During the Reporting Period, with assistance from my counsel Barnes & Thornburg and financial advisor Riveron, I implemented the immediate access provisions of the TRO by taking possession of the offices of the corporate defendants, Financial Education Services, Inc., United Wealth Services, Inc., VR-

3

Tech, LLC, VR-Tech MGT, LLC, CM Rent Inc., and Youth Literacy Foundation (collectively, "Corporate Defendants"). During this time, I and my team interviewed senior level employees with knowledge of the Corporate Defendants and their operations. We also interviewed individual Defendants in the action and engaged in subsequent interviews of employees on June 13 and June 20, 2022. As for other services performed, I and my team conducted several visits to the Corporate Defendants' premises, changed locks on the premises, imaged personal and laptop computers of several key employees and individual Defendants, reviewed, analyzed, and imaged files, books, records, documents, and business records located at the premises, inventoried and identified various assets such as leased locations, company vehicles, made payments from the receivership estate including for payroll, health insurance and welfare benefits, rent and utilities, and conducted extensive analysis of the Corporate Defendants' business operations as well as financial and other business documents. These services and others are set forth in the Receiver's Report.

8.     The Barnes & Thornburg attorneys working on this matter assisted me and Riveron in the above-referenced activities. As set forth in the detailed billing records attached as Exhibit 2, my counsel attended and conducted various meetings and interviews of company personnel, analyzed and worked with company representatives regarding payment of expenses and employee benefits, reviewed

extensive financial and business records to gain an understanding of the Corporate Defendants' business operations, and coordinated with the Corporate Defendants' banking institutions. Extensive services were also rendered to draft and finalize the Receiver's Report filed with the Court. Barnes & Thornburg also filed a miscellaneous action in the United States District Court for the Middle District of Florida, filing certified copies of the Complaint and TRO pursuant to 28 U.S.C. 754, to enable the Receiver to obtain control over receivership property located in that jurisdiction.

9.     As a partner at Barnes & Thornburg, I am familiar with the methods and procedures used to create, record and maintain billing records for the clients of the firm. The billing summaries attached hereto as Exhibits 1 and 2 are prepared from computerized time records prepared contemporaneously with the services rendered by each attorney and paralegal billing time to the matter. These computerized records are prepared in the ordinary course of business by the attorneys and paralegals employed by the firm who have a business duty to accurately record their time spent and services rendered on the matters on which they perform work. The time records are transferred into computerized billing programs that generate monthly invoices under the supervision of the accounting department of the firm. Based upon my experience with Barnes & Thornburg, I

believe the methods and procedures for recording and accounting for time and services for the clients of Barnes & Thornburg are reliable and accurate.

10.     The fees charged by Barnes & Thornburg on this matter reflect a discounted rate below the standard hourly billing rates charged by the firm in 2022 for lawyers and paralegals who worked on this matter.

11.     As set forth in Riveron's detailed billing records attached as Exhibit 3, Riveron conducted extensive services at my direction upon my appointment as Receiver. Such services included:

   a.   Execution of the immediate access provisions of the TRO;

   b.   Attending briefing sessions and meetings with the FTC, Receiver team, and representatives of the Defendants;

   c.   Providing assistance to the FTC and Receiver to implement provisions of the TRO over initial three day period including coordination of securing corporate office access, shutdown of customer payment portal, and protection of corporate assets;

   d.   Conducting interviews of the individual Defendants and others, including Paramal Naik, Michael Toloff, Patrica Karas, Susan Griffin, Pranav Yadov, Christopher Toloff, Laura Cisneros, Chet Seely, Jason Short, and other employees;

e. Attending phone calls and meetings with banking representatives onsite at Defendants' corporate offices to gain access to the bank accounts;

f. Reviewing and analyzing historical Citizens and Huntington bank account transactions to identify use of corporate funds and tracing same to asset purchases;

g. Attending meetings with Defendants' employees to obtain historical customer and agent information, corporate profit and loss statements, balance sheets, and review and analysis of same;

h. Reviewing and analyzing other documents related to compliance, customer and agent information, and other financial information for purposes of preparation of the Receiver's Report.

12.    Additional services performed by Riveron are set forth in detail on page two of the billing records attached as Exhibit 3.

13.    I have more than 30 years' experience as a business and commercial attorney and as a United States Attorney. Based on my experience, the rates charged by the Receiver and Receiver's counsel for the services rendered are reasonable and appropriate considering the nature and scope of the services rendered, the quality of services provided, the complexity of this receivership estate and issues involved, and other factors and circumstances. This is particularly true given the number of

business entities at issue, the interplay between those business entities and their operations. My team worked hard to gain a detailed understanding of the Corporate Defendants' business operations.

I declare under penalty of perjury that the foregoing is true and accurate. Executed on July 13, 2022.

PATRICK A. MILES, JR.