IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | Case No. 2:22-cv-11120 |
| v. | Hon. Bernard A. Friedman |
| **FINANCIAL EDUCATION SERVICES, INC.,** *et al.*, | |
| Defendants. | |

**REPLY BRIEF IN SUPPORT OF MOTION FOR ORDER APPROVING AND AUTHORIZING PAYMENT OF MONITOR'S AND PROFESSIONAL'S FEES AND COSTS [ECF NO. 89]**

**I.   The FES Defendants' Attacks on the Monitorship are Unwarranted.[1]**

The FES Defendants' Response seemingly should be limited to addressing the Monitor's request for reimbursement of attorney's fees and costs. But it is not. And the hyperbolic nature of the FES Defendants' Response is not aligned with the Monitor's interactions with FES Defendants' management and staff, with whom the

---

[1] The FES Defendants filed a "Notice" in which their counsel contends there was a "misstatement by omission" in the Monitor's Motion because the Monitor did not state it was opposed. (ECF No. 91, PageID.5736). This is unfortunately indicative of similar overstatements by the FES Defendants. If the Monitor's Motion was unopposed, as the Court is aware from local practice, the Monitor would have expressly represented it was unopposed or submitted a stipulated order pursuant to LR 7.1(a)(1). The Monitor did neither. Moreover, in seeking concurrence, the Monitor expressly noted to counsel it was "still finalizing the invoices from this time period as of yesterday, otherwise we would have sent them to you further in advance," and offered to prepare an order if, after filing, the FES Defendants concurred. Further, despite the Notice's overly dramatic criticism regarding the day they received a courtesy copy of the invoices prior to filing, the FES Defendants faced neither any loss of right to oppose nor any other harm. If the FES Defendants wanted to resolve the Motion "through meaningful and productive conversation" (*Id.* at PageID.5736), they could have contacted the Monitor in response to the Monitor's invitation after filing. They did not.

Monitor communicates almost daily. The FES Defendants grossly mischaracterize the Monitor's work, team, and proposed budgets. In addressing these misleading criticisms, the Monitor reminds the FES Defendants that he is not their adversary, despite the antagonistic nature of the Response. The Monitor's focus is to carry out the duties in the Monitorship Order, efficiently and cooperatively.[2]

**The Monitor's Budget:** Most glaringly, the Response accuses the Monitor of providing an inflated "$1,950,000.00 annual budget." To be clear, there is no **annual** budget of $1,950,000.00. The Monitor submitted a six-month proposed budget captioned "July 18, 2022 to December 31, 2022," and a three-month budget for Riveron, and the FES Defendants unilaterally extrapolated it to one year. (ECF No. 97-1). The budget expressly states that work "may be eliminated" as the matter develops. In the Monitor's experience, an initial period of any receivership or monitorship entails more extensive services than may be expected in later months. The Monitor budgeted accordingly. The FES Defendants do not dispute the Monitor's initial work included, among other things, significant transition from the receivership, meeting with management, and understanding the "enhance[d] existing processes and compliance procedures and … new technology" that the FES Defendants themselves identify in their Response. (ECF No. 97, PageID.5781).

---

[2] The Monitor vehemently disputes that he has not followed the letter and intent of the Monitorship Order. The Monitor welcomes a conference with FES Defendants' counsel, or the Court, to discuss these matters.

Instead, to bolster their criticism of the Monitor's work, the FES Defendants created an entirely new monitorship budget in their Response and passed it off to the Court as the Monitor's budget.[3] Based on presently known information, a $1,950,000.00 annual budget for this monitorship would not be warranted. If the FES Defendants' counsel asked the Monitor if such a budget were reasonable, the Monitor would have told them no. But they did not ask.

**"Number of Timekeepers":** The FES Defendants criticize the number of Monitor team members, contending the Monitor has "dramatically overstaffed the engagement, exemplified by nine (9) timekeepers …." A review of the detailed time entries, however, provides an accurate characterization. In the initial period, almost **75% of the hours** were billed by only three individuals, one being the Monitor. Four individuals billed 10 hours or less:

| TIMEKEEPER NAME | HOURS | HOURS PERCENTAGE |
|---|---|---|
| Anita Peterson | 20.6 | 9.389 |
| Anthony Sallah | 19.8 | 9.025 |
| Brian Melendez | 8.2 | 3.737 |
| Brian R. Weir-Harden | 2.3 | 1.048 |
| David Hall | 27.8 | 12.671 |
| Patrick Miles, Jr | 77.1 | 35.141 |
| Peter Morris | 53.3 | 24.294 |
| Roslyn Chauvin | 0.3 | 0.137 |
| Trevor Mason | 10.0 | 4.558 |
| TOTALS: | 219.4 | 100.000 |

Nor are "many" of the Monitor's team "billing at close to $600 an hour." The average hourly billing rate of all timekeepers for this period is approximately $452. Further, all of the attorneys are charging discounted rates.

---

[3] Indeed, with the exception of a footnote in which they note an "extrapolat[ion] over a one-year period," the FES Defendants' counsel repeatedly mischaracterizes the Monitor's proposed budget as "annual," "yearly " or "a year". (ECF No. 97, PageID.5782, 5785-5786, 5790, 5803).

3

It is disconcerting the FES Defendants downplay the breadth and complexity of this matter, the Monitor's corresponding duties to monitor compliance with claims asserted, and "all other laws, rules, and regulations." (ECF No. 76, PageID.5551). During the receivership, the businesses had over 9,000 active agents and 17,572 active customers (as of June 21, 2022). More than 140,000 customers enrolled in the services in 2021. Even the FES Defendants' counsel characterizes this case as seeking the "death penalty" for businesses that have allegedly "helped hundreds of thousands." (ECF No. 51, PageID.3438, 3441). *King v. Whitmer*, No. 20-13134, 2021 WL 5711102, at *5 (E.D. Mich. Dec. 2, 2021) ("The length of the pleadings alone justifies the contribution of multiple attorneys to sort through … allegations.").

**"Unreasonable" and "Vague Entries":** The FES Defendants criticize team member Peter Morris for reviewing the pleadings (but which also included other work, as the entries illustrate), but do not explain why. Respectfully, the Monitor's team should be permitted to review the numerous exhibits to the FTC's initial filings and other materials. In most all circumstances, billing for reviewing a case file is not unreasonable, particularly in complex cases. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, No. 3:03-0996, 2010 WL 11610314, at *5 (M.D. Tenn. Apr. 9, 2010) (rejecting requested fee reduction to "get[] up to speed" because "it was necessary for [the attorney] to become familiar with the case, and the hours he billed in performing that task are sufficiently detailed and appropriate.").

4

The FES Defendants additionally condemn the Monitor (after-the-fact) for attending company events in person. To be clear, the Monitor has no issue with remote participation for some events. But the single event (dubbed "Super Saturday") that was attended in this application period was the FES Defendants' first in-person event following the Monitorship Order. Moreover, the Monitor's team interviewed at least three agents and met and talked with several more. If the Monitor had not attended, the Monitor would have incurred fees for reviewing a video presentation and then separately interviewing the agents. Or, the Monitor may not have had the opportunity to interview the agents at all. The Monitor's in-person presence also facilitated relationship-building with key agents of the company.[4]

The FES Defendants criticize three time entries differing in length for a call a week after the Monitorship Order. However, the individuals did not attend the call for the same length because different work was delegated to different individuals.

The FES Defendants also criticize $737.50 in fees for tasks such as "the delivery of mail" in July and August 2022, which they incredulously contend raises "credibility questions as to the entire bill."[5] The FES Defendants ignore that this delivery comprised of roughly hundreds of pieces of company mail in five or so bins,

---

[4] The FES Defendants criticize the Monitor for travel to Florida to interview the same agent twice. They omit (i) this agent is the FES Defendants' highest-earner; (ii) he invited the Monitor to travel to his home for the interview, and (iii) additional topics were covered in the second interview.

[5] This amount ($737.50) represents a mere 1.15% of Riveron's entire bills at issue.

5

on or after entry of the Monitorship Order, when the Monitor team was still facilitating the transfer of business operations as required.

Lastly, the FES Defendants criticize select time entries as block-billing. The Monitor respectfully submits that the invoices and time entries are "sufficiently detailed to provide an understanding of the type of work performed and the expenses incurred." (ECF No. 97-2, PageID.5820). The Court will undoubtedly review the detailed time entries and see that they accurately identify the work performed, of which there can be no dispute. The Monitor welcomes a status conference to discuss whether the Court requests any change to these administrative matters.

Lastly, the FTC, an agency with extensive experience reviewing monitors' work and fees, has stated that the Monitor's work during this application period was "necessary, appropriate, and brought value to the monitorship." (ECF No. 93).

## II.     Riveron's Engagement is Reasonable and Necessary.

The FES Defendants advocate for elimination of the Monitor's engagement of Riveron, positing that Riveron's "proposed monthly budget represents over 50% of the costs of the Monitorship." The FES Defendants compare Riveron to the Federal Government, contending that instead of exercising prudent professional judgment at the Monitor's direction, Riveron will instead fill up time sheets.

At the outset, the FES Defendants ignore the Monitorship Order, which specifically authorizes the Monitor to hire retained professionals "as the Monitor

6

deems advisable or necessary in the performance of duties and responsibilities[.]" (ECF No. 76, PageID.5554, §VI.N). The discretion to hire professionals is not with the Monitored Entities, and the backstop regarding compensation lies with this Court. The Court should not countenance the FES Defendants' attempts to intimidate the Monitor from performing his Court-ordered duties by chipping away at the methods and resources available to the Monitor to observe and report.

More fundamentally, the FES Defendants ignore that the Riveron professionals have been engaged in this matter from day one. They have contributed significantly to the Monitor's duties and have central knowledge of the company's intricate operations. Critically, Riveron has developed important relationships with FES employees. Moreover, the Riveron professionals have key experience working on multi-level marketing company matters, which has proven valuable to the Monitor. At least one of the consultants is a certified fraud examiner experienced in analyzing business operations and making improvement recommendations. To terminate Riveron's engagement now would prejudice the Monitor's efforts to effectively monitor the companies and perform the oversight functions set forth in the Monitorship Order. Riveron has performed valuable services for the Monitor concerning the FES Defendants' business operations.

The Monitor respectfully requests that the Court grant the Motion (ECF No. 89) and approve payment of the Monitorship's incurred fees and costs.

Dated: October 14, 2022	BARNES & THORNBURG LLP

*/s/ Patrick A. Miles, Jr.*
Patrick A. Miles, Jr. (P46379)
David A. Hall (P81426)
Anthony C. Sallah (P84136)
171 Monroe Ave NW, Suite 1000
Grand Rapids, Michigan 49503
Phone: (616) 742-3930
Facsimile: (616) 742-3999
Patrick.Miles@btlaw.com
David.Hall@btlaw.com
Anthony.Sallah@btlaw.com
*On behalf of the Court-appointed Monitor Patrick A. Miles, Jr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2022 a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

Dated:  October 14, 2022              BARNES & THORNBURG LLP

*/s/ Patrick A. Miles, Jr.*
Patrick A. Miles, Jr. (P46379)
David A. Hall (P81426)
Anthony C. Sallah (P84136)
171 Monroe Ave NW, Suite 1000
Grand Rapids, Michigan 49503
Phone:  (616) 742-3930
Facsimile:  (616) 742-3999
Patrick.Miles@btlaw.com
David.Hall@btlaw.com
Anthony.Sallah@btlaw.com
*On behalf of the Court-appointed Monitor Patrick A. Miles, Jr*