UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL TRADE COMMISSION,

          Plaintiff,                           Civil Action No. 22-cv-11120
                                                  HON. BERNARD A. FRIEDMAN

vs.

FINANCIAL EDUCATION
SERVICES, *et al.*,

          Defendants.

_____/

## OPINION AND ORDER DENYING THE TOLOFF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

I.    <u>Introduction</u>

       The Federal Trade Commission commenced this consumer protection action against, among others, Michael and Christopher Toloff (the "Individual Toloff Defendants") and VR-Tech MGT, LLC and CM Rent, Inc. (together, the "Toloff Defendants"). The complaint alleges that the Toloff Defendants marketed credit repair services unlawfully while also promoting an illegal pyramid scheme.

       Before the Court is the Toloff Defendants' motion to dismiss the complaint. (ECF No. 78). The FTC responded. (ECF No. 83). The Toloff Defendants filed a reply. (ECF No. 85). The Court will decide the motion without a hearing pursuant

to E.D. Mich. LR 7.1(f)(2).  For the following reasons, the Court will deny the motion.

II.    Background

  A.    *Factual History*

The Toloff Defendants have been marketing credit repair services to consumers throughout the United States since at least 2015. (ECF No. 1, PageID.2, ¶ 2).  Through internet websites, social media posts, telemarketing, and a host of sales agents, they claim to "improve consumers' credit scores by removing all negative items from their credit reports and adding credit building products." (*Id.*). The FTC says these credit restoration measures are a sham.  And not only that, the Toloff Defendants apparently charge consumers prohibited advance fees to use these services without providing them the requisite disclosures under federal law. (*Id.*, PageID.3, ¶ 2).

Aside from credit restoration, the Toloff Defendants also encourage consumers to become sales agents who (1) market their services to secondary consumers, and (2) recruit those secondary consumers to become sales agents themselves. (*Id.*, ¶ 3).  Sales agent incentives run the gamut from assurances of exaggerated future commissions to discounts on credit repair products and services. (*Id.*, PageID.20-24, 26-31, ¶¶ 39-42, 44, 49-60).  The FTC labels this aspect of the Toloff Defendants' operations an illegal pyramid scheme. (*Id.*).

2

B.      *Procedural History*

The FTC filed this lawsuit against several individuals and businesses, including the Toloff Defendants, seeking a permanent injunction and monetary relief. (ECF No. 1).  The complaint alleges that the Toloff Defendants violated section 5(a) to the Federal Trade Commission Act, the Credit Repair Organizations Act, and the Telemarketing Sales Rule. (*Id.*, PageID.32-46, ¶¶ 63-117).

Coincident to filing the complaint, the FTC moved *ex parte* for a temporary restraining order to, among other things, freeze the Toloff Defendants' assets and appoint a receiver over VR-Tech MGT and CM Rent (hereinafter, the "Business Entities"). (ECF No. 3).  Although it initially granted the requested relief (ECF No. 10), the Court ultimately vacated the temporary restraining order and converted the receivership into a monitorship. (ECF No. 76).

The Toloff Defendants now move to (1) dismiss the Individual Toloff Defendants from the case, and (2) preclude the FTC from obtaining permanent injunctive and monetary relief.

III.    Legal Standards

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6).  "The factual allegations

3

in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).  The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

IV.   Analysis

    A.   *The Complaint Alleges Plausible Claims for Relief Against the Individual Toloff Defendants*

Section 5(a)(2) to the FTC Act "empowers" the Commission to "prevent persons, partnerships, or corporations . . . from using . . . unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2) (the codified version of section 5(a)(2) to the FTC Act).

To plausibly establish its entitlement to injunctive relief against the Individual Toloff Defendants for the Business Entities' deceptive acts or practices, the FTC must allege that (1) the entities violated section 5(a), (2) the Individual Toloff Defendants participated directly in the Business Entities' deceptive acts or practices, or had the authority to control them, and (3) the Individual Toloff Defendants knew

or should have known about the alleged deceptive misrepresentations.[1] *FTC v.*

*E.M.A. Nationwide, Inc.*, 767 F.3d 611, 636 (6th Cir. 2014).

With respect to the second element, controlling shareholders of closely-held

corporations are presumed to have the authority to control corporate acts. *Id.*; *see*

*also FTC v. Freecom Communs., Inc.*, 401 F.3d 1192, 1205 (10th Cir. 2005) (holding

---

[1] The FTC suggests at times that the Individual Toloff Defendants participated in a common enterprise *with* the Business Entities. (ECF No. 83, PageID.5645-47). But common enterprise liability is a separate "theory of liability" from individual liability. *E.M.A. Nationwide*, 767 F.3d at 636-37 (analyzing common enterprise and individual liability distinctly). Common enterprise theory disregards formal corporate structures and imposes joint and several liability where "a maze of integrated business entities" violate the law. *Id.* at 637 (cleaned up). Individual liability holds individual people accountable for a business's (or a group of businesses') deceptive acts or practices that may or may not have been accomplished through a common enterprise. *Id.* at 636.

Here, the complaint alleges that the Business Entities "operated as a common enterprise while engaging in the unlawful acts and practices" – not the Individual Toloff Defendants. (ECF No. 1, PageID.9, ¶ 17). And the FTC's response brief acknowledges that "Defendants Michael and Christopher Toloff are individually liable for the law violations *committed by the common enterprise of the Corporate Defendants*." (ECF No. 83, PageID.5645) (emphasis added). Because the FTC solely contends that the Individual Toloff Defendants are individually responsible for the Business Entities' unlawful practices, the Court will only address whether the complaint's allegations plausibly establish their individual liability.

In light of this decision, there is no need to resolve the open question whether individuals may be subject to common enterprise liability. *See N.M. ex rel. Balderas v. Real Estate Law Ctr., P.C.*, 401 F. Supp. 3d 1229, 1309 n.64 (D.N.M. 2019) (collecting conflicting authority); *compare CFTC v. Wall St. Underground, Inc.*, 281 F. Supp. 2d 1260, 1271 (D. Kan. 2003) ("Individuals may also be held to be participants in a common enterprise where the individual and the other members of the enterprise operate as a single economic entity.") *with Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, No. 15-5211, 2016 U.S. Dist. LEXIS 177756, at *51 (S.D.N.Y. Dec. 2, 2016) (holding that "common enterprise liability only applies to corporations, not to individuals").

that status as controlling shareholder of closely-held corporation raises a "substantial inference" of authority to control the company's deceptive acts and practices). As for the third element, scienter may be established through plausible allegations "that the individual defendant had actual knowledge of the deceptive conduct, or was recklessly indifferent to its deceptiveness, or had an awareness of a high probability of deceptiveness and intentionally avoided learning of the truth." *FTC v. Moses*, 913 F.3d 297, 307 (2d Cir. 2019) (cleaned up) (collecting cases from the First, Fourth, Seventh, Ninth, Tenth, and Eleventh Circuits applying the same knowledge standard).

The Toloff Defendants do not contest whether the complaint sufficiently alleges that the Business Entities violated section 5(a), *i.e.*, the first individual liability element. They instead maintain the FTC fails to plausibly assert whether the Individual Toloff Defendants (1) possessed the authority necessary to control the Business Entities, and (2) knew or should have known about the Business Entities' purported deceptive practices. (ECF No. 78, PageID.5596, 5600-02). The Court disagrees.

The FTC alleges that Michael Toloff:

- is or was an owner, officer, director, or manager of VR-Tech MGT (ECF No. 1, PageID.8, ¶ 14);

- is an authorized signatory on many of the Business Entities' bank accounts (*Id.*); and that

6

- he formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in the complaint. (*Id.*).

The complaint further asserts that Christopher Toloff:

- is or was an owner, officer, director, or manager of CM Rent (*Id.*, at PageID.8, ¶ 15);

- is an authorized signatory on many of the Business Entities' bank accounts (*Id.*); and that

- he formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in the complaint. (*Id.*).

The FTC details how the Business Entities operated an unlawful credit repair scheme through:

- deceptive internet and social media claims (*Id.*, PageID.10-16, ¶¶ 19-22, 26-27);

- deceptive telemarketing activities (*Id.*, PageID.14-15, ¶¶ 23-25);

- charging registration or activation fees before providing credit repair services (*Id.*, PageID.16-17, ¶¶ 28-30);

- failing to provide and obtain written contracts detailing the terms of the provided services (*Id.*, PageID.17-18, ¶ 31);

- failing to provide legal notices required under federal law (*Id.*, PageID.18, ¶¶ 32-33); and

- failing to fulfill their advertised credit repair services (*Id.*, PageID.18-19, ¶¶ 34-36).

And the complaint relates how the Business Entities ran an illegal pyramid scheme through:

- deceptive internet and social media claims (*Id.*, PageID.19-25, ¶¶ 38-41, 43);

- deceptive telemarketing activities (*Id.*, PageID.24, ¶ 42);

- providing consumers with deceptive advertising materials (*Id.*, PageID.26-27, ¶¶ 46-48); and

- creating a compensation structure of commissions and bonuses that incentivizes consumers to work as sales agents who (1) market credit repair services to secondary consumers, and (2) recruit those secondary consumers to become sales agents as well (*Id.*, PageID.27-31, ¶¶ 49-60).

Read together, the FTC's allegations (1) raise a plausible inference that the Individual Toloff Defendants have the authority to control the Business Entities, *see E.M.A. Nationwide*, 767 F.3d at 636, and (2) plausibly demonstrate that they possess, at the most basic level, "an awareness of a high probability of deceptiveness and intentionally avoided learning of the truth." *Moses*, 913 F.3d at 307. The complaint's factual allegations are, therefore, adequate to notify the Individual Toloff Defendants "as to what claims are alleged" and contain "sufficient factual matter to render" those claims "plausible."[2] *Fritz*, 592 F.3d at 722.

---

[2] The FTC references its *ex parte* motion for a temporary restraining order, and the documents attached to that motion, to bolster its position that the complaint states plausible claims for relief against the Individual Toloff Defendants. The Court declines to consider these documents because they are not "written instruments" that

B.      *The Court Has the Authority to Award Permanent Injunctive Relief*

The FTC may obtain permanent injunctive relief where it "has reason to believe that any person, partnership, or corporation *is violating*, or *is about to violate*, any provision of law enforced by the" Commission. 15 U.S.C. § 53(b) (the codified version of section 13(b) to the FTC Act) (emphasis added). The Toloff Defendants argue that the complaint exclusively targets their alleged past conduct, which falls outside the *prospective* scope of the FTC Act's permanent injunctive remedies. (ECF No. 78, PageID.5602-04).

In *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348 (2021), the United States Supreme Court construed section 13(b) to the FTC Act as "focus[ing] upon relief that is prospective, not retrospective." The Court read the statute's use of the phrases "is violating" and "is about to violate" to limit the timeframe "when the Commission may request injunctive relief" to either the present or the immediate future. *Id.* In its view, these terms indicate that section 13(b) "addresses a specific

---

are attached as "exhibit[s] to a *pleading*." Fed. R. Civ. P. 10(c) (emphasis added); *see also* Fed. R. Civ. P. 7 (distinguishing "pleadings" from "motions"); *Marco Int'l, LLC v. Como-Coffee, LLC*, No. 17-10502, 2018 U.S. Dist. LEXIS 63249, at *2 n.1 (E.D. Mich. Apr. 16, 2018) (holding that documents attached to motions do not qualify as exhibits to a pleading that may be considered on a motion to dismiss the complaint); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (stating that even the "[m]ere reference to the existence of a document that has not been attached usually is not sufficient"). Nor do motions constitute pleadings whose contents may be "adopted by reference . . . in any other pleading or motion." Fed. R. Civ. P. 10(c); *see also Marco Int'l*, 2018 U.S. Dist. LEXIS 63249, at *2 n.1.

problem, namely, that of stopping seemingly unfair practices from taking place *while* the Commission determines their lawfulness." *Id.* (emphasis added); *see also FTC v. Shire Viropharma, Inc.*, 917 F.3d 147, 156 (3d Cir. 2019) (same).

But the Toloff Defendants misconstrue the nature of the FTC's allegations. The complaint often resorts to the present or present-perfect tenses to describe how the Toloff Defendants marketed their credit repair services deceptively. For instance, the FTC asserts that "[b]efore providing any of the promised credit repair services, Defendants *require* consumers to make an upfront payment for these services," and that "Defendants and their agents *have made* the following statements regarding Defendants' credit repair services." (ECF No. 1, PageID.11, 16, ¶¶ 21, 28) (emphasis added). In a section entitled "Ongoing Nature of Defendants' Unlawful Practices," the FTC claims that "[b]ased on the facts and violations of law . . . the FTC has reasons to believe that Defendants *are violating or are about to violate* laws enforced by the FTC." (*Id.*, PageID.31, ¶ 62) (emphasis added). And perhaps most compelling, in a section captioned "Consumer Injury," the complaint alleges that:

> Consumers *are suffering*, have suffered, and *will continue to suffer* substantial injury as a result of Defendants' violations of the FTC Act, CROA, and the TSR. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

(*Id.*, PageID.46, ¶ 118) (emphasis added). So the present and ongoing nature of the alleged deceptive practices is apparent from the complaint.

For their part, the Individual Toloff Defendants attempt to short-circuit the FTC's request for permanent injunctive relief by claiming that they have now resigned their controlling positions with the Business Entities. (ECF No. 85, PageID.5671).  This development, if true, does not insulate them from a permanent injunction.

To start with, the Court has no means of verifying whether the Individual Toloff Defendants actually resigned their positions without a declaration or affidavit from someone with personal knowledge. *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 621 (6th Cir. 2018) ("an attorney's statement in a brief is not evidence.").  Nor does their lack of official or managerial authority to run the Business Entities preclude them from somehow operating the companies outside formally recognized corporate channels.  And nothing at this juncture in the litigation – not even the monitorship – bars them from returning to the official or managerial positions they vacated previously.

For all these reasons, the complaint contains plausible allegations of present and ongoing deceptive practices that would authorize the Court to award a permanent injunction "after proper proof." 15 U.S.C. § 53(b).  The portion of the Toloff Defendants' motion challenging the FTC's legal entitlement to such relief is, therefore, denied.

11

### C.    *The Court Has the Authority to Award Monetary Relief*

The Toloff Defendants lastly contend that the Court may not award monetary relief pursuant to section 13(b). (ECF No. 78, PageID.5604-05).  And they're right.

Looking once again to *AMG Capital*, the Supreme Court held that "§ 13(b)'s 'permanent injunction' language does not authorize the Commission directly to obtain court-ordered monetary relief." 141 S. Ct. at 1348.  Rather, "[t]he language and structure of §13(b), taken as a whole, indicate that the words 'permanent injunction' have a limited purpose – a purpose that does not extend to the grant of monetary relief." *Id.*

The Toloff Defendants overlook an important facet to this case though.  The FTC invokes both sections 13(b) *and* 19 to the FTC Act to prosecute its claims. (ECF No. 1, PageID.2, 37-38, 44, ¶¶ 1, 86, 109).   Section 19(a)(1) authorizes the Commission to enforce any rule promulgated under the FTC Act "respecting unfair or deceptive acts or practices." 15 U.S.C. § 57b(a)(1).   And section 19(b) contemplates the "refund of money," the "return of property," or the "payment of damages" to remedy consumer injuries resulting from any section 19(a)(1) violation. 15 U.S.C. § 57b(b).

Here, the FTC sued the Toloff Defendants for violating the Credit Repair Organizations Act ("CROA") and the Telemarketing Sales Rule ("TSR"). (ECF No. 1, PageID.34-46, ¶¶ 75-117).  The CROA provides that any violation of the statute

12

"shall constitute an unfair or deceptive act or practice in commerce in violation of section 5(a) of the Federal Trade Commission Act." 15 U.S.C. § 1679h(b)(1).  The FTC must pursue CROA violations "in the same manner as if the violation had been a violation of any Federal Trade Commission *trade regulation rule*." 15 U.S.C. § 1679h(b)(2) (emphasis added).  Likewise, any TSR violation "constitute[s] an unfair or deceptive act or practice in violation of section 5(a)(1)" to the FTC Act. 15 U.S.C. §§ 57a(d)(3), 6102(c)(2); *see also E.M.A. Nationwide*, 767 F.3d at 633-34; *FTC v. Stefanchik*, 559 F.3d 924, 929-30 (9th Cir. 2009).

Since both the CROA and TSR qualify as rules promulgated under the FTC Act "respecting unfair or deceptive acts or practices," 15 U.S.C. § 57b(a)(1), the FTC may petition this Court for monetary relief to "redress" the consumer injuries stemming from the Toloff Defendants' alleged violations. 15 U.S.C. § 57b(b). Accordingly,

IT IS ORDERED that the Toloff Defendants' motion to dismiss the complaint (ECF No. 78) is denied.

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Senior United States District Judge

Dated: February 13, 2023
    Detroit, Michigan

13