PENTIUK, COUVREUR & KOBILJAK, P.C. · ATTORNEYS AND COUNSELLORS AT LAW · EDELSON BUILDING, SUITE 200 · 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 · (734) 281-7100

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**FEDERAL TRADE COMMISSION,**

        **Plaintiff,**

**vs.**

**FINANCIAL EDUCATION
SERVICES, *et al.*,**

        **Defendants.**

_____/

**Civil Action No. 22-cv-11120
HON. BERNARD A. FRIEDMAN**

## <u>NOTICE OF HEARING</u>

PLEASE TAKE NOTICE that Defendant, Gerald Thompson's Motion to Dismiss will be heard before the Honorable Bernard A. Friedman, at the Theodore Levin U.S. Courthouse, Room 110, 231 W. Lafayette Blvd., Detroit, MI  48226 on the ___ day of _____, 2023, at _____.

        Respectfully submitted,
        **Pentiuk, Couvreur & Kobiljak, P.C.**

        By:  */s/Kerry L. Morgan*_____
        Kerry L. Morgan (P32645)
        *Attorneys for Defendant, Gerald Thompson*
        2915 Biddle Avenue, Suite 200
        Wyandotte, MI  48192
        Phone:  (734) 281-7100
        Facsimile:  (734) 281-7102
        Kmorgan@pck-law.com

Dated:  April 10, 2023

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**FEDERAL TRADE COMMISSION,**

      **Plaintiff,**                      **Civil Action No. 22-cv-11120**
                                        **HON. BERNARD A. FRIEDMAN**

**vs.**

**FINANCIAL EDUCATION**
**SERVICES,** *et al.*,

      **Defendants.**

_____/

## <u>MOTION TO DISMISS</u>

Defendant Gerald Thompson, by and through undersigned counsel, moves the Court for an Order dismissing the Plaintiff's Amended Complaint (ECF No. 121), pursuant to Fed. R. Civ. P. 12(b)(6) and E.D. Mich. LR 7.1.

Pursuant to E.D. Mich. LR 7.1(2)(A), counsel for Defendant Gerald Thompson communicated with counsel for Plaintiff Federal Trade Commission in good faith regarding the nature of this Motion on April 9 and 10, 2023. Plaintiff's counsel advised that the FTC objects to this Motion.

In support of this Motion, Defendant relies upon his Brief in Support being filed simultaneously herewith.

Respectfully Submitted,
PENTIUK, COUVREUR & KOBILJAK, P.C.

By: */s/Kerry L. Morgan*
Kerry L. Morgan (P32645)
*Attorneys for Defendant, Gerald Thompson*
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Telephone: 734-281-7100
Fascimile:  734-281-7102
Email: Kmorgan@pck-law.com

Dated: April 10, 2023

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**FEDERAL TRADE COMMISSION,**       **Civil Action No. 22-cv-11120**
**Plaintiff,**                               **HON. BERNARD A. FRIEDMAN**

**vs.**

**FINANCIAL EDUCATION SERVICES,** *et al.*,

**Defendants.**
_____/

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant Gerald Thompson, by and through undersigned counsel, moves the Court for an Order dismissing the Plaintiff's Amended Complaint (ECF No. 121), Counts I -XVI against Defendant Thompson in connection with YFLF as its former unpaid volunteer officer or President, pursuant to Fed. R. Civ. P. 12(b)(6) and E.D. Mich. LR 7.1, and in support thereof states as follows.

1

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**........................................................................ii

**STATEMENT OF THE ISSUES PRESENTED** ....................................iv

**CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT** ...................... v

**INTRODUCTION** ....................................................................... 2

**LEGAL STANDARD**................................................................. 4

**ARGUMENT** ...............................................................................5

    1.   There Is No Operational Test Entrusted to The FTC to Determine if YFLF is a Nonprofit Organization, Only an Organizational Test..................5

    2.   Michigan Law Regarding What Constitutes a Nonprofit Corporation is Controlling as a Matter of 15 U.S.C. § 6824a. ...............................................7

    3.   The Definition of Nonprofit Organization Under CROA Ultimately Leads Back to State Law. ............................................................................10

    4.   No General FTC Jurisdiction Over Nonprofit Organizations Exists ......12

    5.   FTC Cited Case Law Is Unavailing .......................................................13

**CONCLUSION**................................................................................. 18

i

# TABLE OF AUTHORITIES

**Cases**

*Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001) ...................................4

*Bahdouchi v. Third Eye, Inc.,* No. 04-CV-12997-DT, (January 21, 2005) .............17

*California Dental Ass'n v. F.T.C.,* 526 U.S. 756 (1999) .............................14, 15, 16

*Cmty. Blood Bank of the Kansas City Area v. FTC*, 405 F.2d 1011
    (8th Cir. 1969) .............................................................................15

*Daunt v. Benson,* 999 F.3d 299, 308 (6th Cir. 2021)...................................4

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) ...................4

*FTC v. Ameridebt, Inc.,* 343 F. Supp. 2d 451 (D. Md. 2004)..................................16

*Zimmerman v. Cambridge Credit Counseling Corp*., 529 F. Supp. 2d 254 (D.
    Mass. 2008)..............................................................................16, 17

*Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010) .................................17

**Federal Statutes**

15 U.S.C. § 44............................................................. iv, 3, 5, 9, 11, 12, 13

15 U.S.C. § 45.......................................................................3, 5, 11, 12

15 U.S.C. § 45(a) ....................................................................2, 5, 9

15 U.S.C. § 45(m)(1)(A) .............................................................. 2, 3

15 U.S.C. § 53(b) ...................................................................... 3

15 U.S.C. § 56(a) ...................................................................... 3

15 U.S.C. § 57b......................................................................... 3

15 U.S.C. § 656 ........................................................................... 10

15 U.S.C. §1679a(3)(B)(i) ............................................... iv, 4, 5, 18

15 U.S.C. § 1679h(b) .............................................................. 3, 12

15 U.S.C. § 6822(a) ...................................................................... 7

15 U.S.C. § 6824(a) ................................................................. iv, 7

26 U.S.C. § 501(c)(3) ........................................ iv, 3, 4, 5, 8, 9, 10

**Code of Federal Regulations**

26 C.F.R. § 1.501(c)(3) - 1(b)(5) ................................................ 10

**State Statutes**

MCL § 450.2108(2) ....................................................................... 7

MCL § 450.2203(1)(e) .................................................................. 6

MCL § 450.2221 ........................................................................... 8

MCL § 450.2301(5) ....................................................................... 8

**Court Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................... 1, 4, 19

E.D. Mich. LR 7.1 ................................................................. 1, 19

iii

## STATEMENT OF THE ISSUES PRESENTED

1.    Does 15 U.S.C. § 44 which limits Plaintiff's jurisdiction under the FTC Act to prohibit, sue, and enjoin only those corporations "organized to carry on business for its own profit or that of its members," deny the Plaintiff jurisdiction to plead a violation of the FTC Act against Defendant Thompson as a former unpaid volunteer officer of Youth Financial Literacy Foundation (YFLF) organized as a non-profit corporation under State law on a Directorship basis?

　　　　Plaintiff says:  No

　　　　Defendant Thompson says:  Yes

2.    Does the FTC's jurisdiction under the Credit Repair Organization Act (CROA) where 15 U.S.C. 1679a(3)(B)(i) excludes from the definition of a Credit Repair Organization "any nonprofit organization which is exempt from taxation under section 501(c)(3) of title 26," deny the Plaintiff jurisdiction to plead violations of CROA against Thompson as an former unpaid volunteer officer of YFLF?

　　　　Plaintiff says:  No

　　　　Defendant Thompson says:  Yes

3.    Is the FTC bound to follow Michigan state law's definition of a non-profit corporation as one *organized* on a non-profit basis as per 15 U.S.C. § 6824(a), thereby precluding the Plaintiff from stating a claim against Thompson as an officer of YFLF

based solely on allegations concerning YFLF's *operational* allegations?

Plaintiff says:  No

Defendant Thompson says:  Yes

## **CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT**

15 U.S.C. § 44.......................................................................................iv, 3, 9, 11, 12, 13

15 U.S.C. §1679a(3)(B)(i).......................................................................iv, 4, 5

15 U.S.C. § 6824(a) .....................................................................................iv, 7

MCL § 450.2108(2).......................................................................................... 7

MCL § 450.2203(1)(e) ..................................................................................... 6

MCL § 450.2221................................................................................................ 8

MCL § 450.2301(5)........................................................................................... 8

*Bahdouchi v. Third Eye, Inc*., No. 04-CV-l2997-DT, (January 21, 2005) ................ 17

## <u>INTRODUCTION</u>

The Federal Trade Commission commenced its consumer protection action against multiple Defendants including one of the corporate defendant's outside legal counsel, Gerald Thompson. Thompson was also an unpaid volunteer officer of Defendant Youth Financial Literacy Foundation (YFLF) during the applicable time period. In connection with Thompson, the sole paragraph specifically referencing him in the Amended Complaint (ECF No. 121, filed 03/27/23) is paragraph 18 which alleges:

> 18. Defendant Gerald Thompson is or was an owner, officer, director, or manager of Youth Financial and FES. He is an authorized signatory on many of Defendants' bank accounts. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Gerald Thompson resides in this District and, in connection with the matters alleged herein, transacts, or has transacted business in this District and throughout the United States.

All other allegations in the Amended Complaint simply lump Thompson in as "Defendant."

The FTC's Amended Complaint seeks relief under several acts and rules but two are especially relevant here. The first is the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a) [authority to prohibit using unfair methods of competition], 45(m)(1)(A), [authority to commence a civil action to recover a civil

2

penalty], 53(b) [authority to enjoin], 56(a) [duty to consult with Attorney General prior to action], and 57b [authority to enforce Commission rules]. The second is the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679h(b) [authority to enforce violation of CROA as an unfair or deceptive act].

The FTC, however, ignores the limitations Congress imposed upon it under 15 U.S.C. § 44 which restricts its authority under the FTC Act to prohibit, sue, and enjoin only those corporations "organized to carry on business for its own profit or that of its members."

The FTC's Amended Complaint fails to allege a single corporate defendant is "organized to carry on business for its own profit or that of its members."   But more importantly for this motion, Plaintiff has admitted that YFLF is *organized* as a non-profit corporation under Michigan law. "Defendant Youth Financial Literacy Foundation ("Youth Financial") is a Michigan nonprofit corporation with its principal place of business at 37637 Five Mile Road, Suite 397, Livonia, Michigan." ECF No. 121, PageID.6333-34.

 Thompson's Rule 12 Motion to Dismiss contests the FTC's jurisdiction to bring any action against himself as an officer of YFLF under 15 U.S.C. §§ 44-45 because the FTC has admitted that YFLF is organized as a Michigan non-profit corporation, and also a 501(c)(3) tax exempt organization. See ECF No. 3,

3

PageID.83.

Thompson also challenges the FTC's jurisdiction under CROA over himself as an officer of YFLF.   Title 15 U.S.C. 1679a(3)(B)(i) "does not include (i) any nonprofit organization which is exempt from taxation under section 501(c)(3) of title 26" in its definition of a credit repair organization.   Such organizations are exempt from all requirements of the Credit Repair Organizations Act (CROA). Thompson, as its officer, is likewise exempt.

## LEGAL STANDARD

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6).   "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).   The Court may consider "exhibits attached to the complaint" to decide the motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

**ARGUMENT**

**1.   There Is No Operational Test Entrusted to The FTC to Determine if YFLF is a Nonprofit Organization, Only an Organizational Test.**

Plaintiff has taken an unwarrantedly broad view of its own jurisdiction over non-profit corporations under the FTC Act and CROA.   FTC's jurisdiction to bring any action under the FTC Act against Thompson as an officer of YFLF under 15 U.S.C. §§ 44 & 45 is absent because a "Corporation" only includes a corporation "which is **organized** to carry on business for **its own profit** or that of its members." (Emphasis added) 15 U.S.C. § 44.   The FTC has admitted that YFLF is **organized** as a Michigan non-profit corporation, and a 501(c)(3) tax exempt organization.   See ECF No. 3, PageID.83. ECF No. 121, PageID.6333-34. Thompson therefore is alleged only to be an officer of a corporation which is not organized to carry on business for its own profit.

So too, the phrase "any nonprofit organization which is exempt from taxation under section 501(c)(3) of title 26" as used in CROA 15 U.S.C. § 1679a(3)(B)(i) exempts YFLF from all requirements of the Credit Repair Organizations Act (CROA). Yet, Plaintiff's Amended Complaint asserts a right to judge – independently of the statute and the IRS - whether YFLF has *operated* as a nonprofit organization for purposes of CROA.

Plaintiff is mistaken as a matter of law on a number of fronts about what it means to "carry on business for its own profit" as follows: 1) there is no *operational* test associated with being a nonprofit organization, only an *organizational* test, for

purposes of CROA; 2) Plaintiff does not have jurisdiction to prosecute YFLF for any alleged violations of CROA because of its status as a nonprofit organization; and 3) the question of whether YFLF is a nonprofit organization is quintessentially a matter of state law, not federal law, which means that Michigan law controls the matter, not any FTC rule.

The generally accepted meaning of "nonprofit" has nothing to do with whether an organization generates a profit from its operations, or whether it receives revenues from sales of goods or services as opposed to donations.   The meaning of "nonprofit" has nothing to do with operations, as such.   In a nonprofit organization, its net assets or net income are not supposed to directly benefit any private persons or private interests.   Most fundamentally, no private person or interest is permitted to profit from the ownership or sale of an equity interest in the organization.   Hence, a nonprofit organization is typically regarded as an organization having no owners.

That is why, in several states, nonprofit corporations are not called by that name as such, but by statute they are called "non-stock corporations," and in those states, "nonprofit" and "non-stock" are interchangeable terms.   Although, as a technical matter, some states (including Michigan) allow a nonprofit corporation to issue stock, such shares of stock are not transferable and shall be canceled upon the death or resignation of the owner of the shares, thus effectively preventing transfers of equity or value in the corporation.   MCL § 450.2203(1)(e).   Additionally, such shares may not be used as a basis for making distributions to shareholders.

Defendant YFLF, having no stock or owners and instead established on a

Directorship basis, thereby conforms to the generally accepted meaning of a nonprofit organization.

**2.   Michigan Law Regarding What Constitutes a Nonprofit Corporation is Controlling and Binds the FTC as a Matter of 15 U.S.C. § 6824a.**

A review of Michigan law, specifically reinforces these particulars and is binding on the parties.   It is important to first note that the FTC alleges violations of multiple statutes including the GLB Act, 15 U.S.C. § 6822(a). ECF No. 121, PageID.6328. That section gives the FTC certain enforcement powers which it pleads here. Section 6824, however, has a caveat. It provides that "[t]his subchapter shall not be construed as superseding, altering, or affecting the statutes, regulations, orders, or interpretations in effect in any State, except to the extent that such statutes, regulations, orders, or interpretations are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. § 6824a. In other words, the FTC allegations about what it considers a valid or invalid non-profit corporation do not supersede, alter, or affect state law.

What does state law say about how one knows a non-profit when they see it? Quoting from the Michigan Nonprofit Corporation Act:

> "Nonprofit corporation" means a corporation incorporated to carry out any lawful purpose or purposes that does not involve pecuniary profit or gain for its directors, officers, shareholders, or members.   MCL § 450.2108(2).
> Filing of the articles of incorporation is conclusive evidence that all conditions precedent required to be performed under this act have been

7

fulfilled and that the corporation has been formed under this act, except in an action or special proceeding by the attorney general.    MCL § 450.2221.

(5) A corporation whose lawful activities include the charging of fees or prices for its services or products may receive the income and may make a profit as a result of its receipt. Except as authorized in subsections (2), (3), and (4), the corporation shall apply all of that resulting profit to the maintenance, expansion, or operation of the lawful activities of the corporation.    MCL § 450.2301(5).

The first two statutory provisions cited above firmly establish that under Michigan law, a nonprofit corporation is determined solely by how it is organized - not by any operational tests, and its articles of incorporation are conclusive proof regarding the matter.

The third provision reinforces the principle that there is no monetary limit on the income, revenues or profit that a nonprofit organization may receive.   This, of course, agrees with federal tax laws, which impose no monetary limit on the income, revenues or profit that an exempt organization may receive under section 501(c)(3). Michigan law also undercuts the argument that by engaging in a "for-profit transaction" or a "for-profit business" a nonprofit corporation somehow becomes less of a nonprofit.   It does not work that way.

"Nonprofit" has nothing to do with a profit from operations, or the amount of money that is received by an organization - it only goes to the question of ownership and equity interests in the organization. Thus, salacious allegations like paragraph 73 alleging Defendants "have collected at least $213,000,000 from consumers" has no legal meaning in the context of YFLF as a non-profit. ECF No. 121, PageID.6361.

8

Neither does "nonprofit" have anything to do with the extent of charitable activities undertaken by a nonprofit organization for purposes of either 15 U.S.C. § 44 or § 45.   In this respect, the FTC has confused the standards for exemption from CROA (which requires both § 501(c)(3), i.e., charitable, status and nonprofit status) and the standard for the exclusion from the definition of a "corporation" in the FTC Act, which only requires nonprofit status, and not charitable status. Thus, the FTC's TRO allegations concerning YFLF's charitable giving is irrelevant. ECF No. 3, PageID.138.

Consequently, the FTC has no statutory basis whatsoever for imposing a charitable activities test on an organization claiming to be a nonprofit organization for purposes of the exclusion from the FTC's jurisdiction.   Charitable activities are not required. If Congress had wanted to impose a two-part test in the FTC Act, it could have done so along the lines of what it did in CROA. But Congress did not do that, so the FTC cannot take it upon itself to write a charitable activities test into the Act.

State law is clear in defining a non-profit corporation on the basis of its organization. FTC allegations about what it considers a valid or invalid non-profit corporation do not supersede, alter, or affect state law. State law controls the question. The FTC has failed to state a claim against YFLF regarding its non-profit status on the basis of its operation, precisely because State law fixes the boundary of a non-profit to its organization -- an organization Plaintiff has conceded.

### 3.   The Definition of Nonprofit Organization Under CROA Ultimately Leads Back to State Law.

CROA does not expressly define the term "nonprofit organization," but that does not mean it has any meaning the FTC asserts.   We have noted that Plaintiff is bound by the state law organizational definition of the term. But Plaintiff is sure to fall back on *federal law* to argue its case.   *Arguendo*, therefore, there may be three possible definitions of a nonprofit organization for purposes of CROA.

1.     The standard used in 15 U.S.C. § 656, where exempt status under § 501(c) is conclusive proof of being a nonprofit organization.

2.     The standard explicitly used by the IRS in the tax regulations applicable to 26 U.S.C. § 501(c)(3), as follows:

> (5)   **Construction of terms.**   The law of the State in which an organization is created shall be controlling in construing the terms of its articles.   However, any organization which contends that such terms have under State law a different meaning from their generally accepted meaning must establish such special meaning by clear and convincing reference to relevant court decisions, opinions of the State attorney-general, or other evidence of applicable State law. See 26 C.F.R. § 1.501(c)(3)-1(b)(5).

In other words, for §501(c)(3) purposes, state law (in this case, Michigan law) controls the meaning of the term *nonprofit organization*.   Even if someone wants to dispute the meaning of the term or impose a meaning other than its generally accepted meaning, they may only do so by producing "clear and convincing ... evidence of state law."   That's a tough legal uphill slog for the Plaintiff based on what is argued here. As per federal law, state law controls the definition of terms

10

pertaining to the nature of an entity formed under state law.

For all purposes under CROA, the term "nonprofit organization" is to be understood in its generally accepted sense. There is no special or heightened scrutiny applied to the term, nor is it subject to any artificial constructions by Plaintiff so as to defeat the clear intention of Congress to exempt entities exactly like Defendant YFLF. In other words, whatever the State of Michigan says is a nonprofit organization, is a nonprofit organization for federal purposes.

3.   The standard used in the statutory provisions which form the basis of the powers and jurisdiction of the Federal Trade Commission.

> (2) The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, ... from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.   15 U.S.C. § 45.

> "Corporation" shall be deemed to include any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, which is organized to carry on business for its own profit or that of its members, and has shares of capital or capital stock or certificates of interest, and any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, **without shares of capital or capital stock or certificates of interest, except partnerships, which is organized to carry on business for its own profit or that of its members**. (Emphasis added) 15 U.S.C. § 44.

However, none of the above quoted statutes define either a "nonprofit entity" or the term "nonprofit." But 15 U.S.C. § 44, which defines "corporation" for the purposes of § 45, defines it in such a way that only those corporations which are "*organized* to carry on business *for its own profit* or that of its members" are

11

included.

Notice that the definition of a corporation subject to the jurisdiction of the FTC is defined on the basis of how it is *organized*, not on how it is *operated*. This distinction is the ignored lynchpin of Plaintiff's case. How a corporation is organized is determined solely and exclusively by reference to what is said in the entity's articles of incorporation filed under state law. This is true for the IRS, and it is true for the FTC.

YFLF's articles of incorporation recite its exempt purposes in Article II, Article V:

> No part of the net income or net assets of the corporation shall inure to the benefit of, or be distributable to, its directors, officers, members or other private persons. However, the corporation is authorized to pay reasonable compensation for services actually rendered and to make payments and distributions in furtherance of its tax exempt purposes.

Defendant YFLF is not "organized to carry on business for its own profit" as section 45 states, but rather is organized not for its own profit or that of its members. Accordingly, YFLF *is organized* a nonprofit and exempt organization under CROA as a matter of law and is not a corporation as described in 15 U.S.C. § 44.

**4. No General FTC Jurisdiction Over Nonprofit Organizations Exists.**

Since YFLF is a nonprofit organization under CROA, then it is also a nonprofit entity under 15 U.S.C. § 44, undercutting the FTC's jurisdiction to maintain this action against it for any reason. The FTC's authority under CROA 15 U.S.C. § 1679h(b), to treat CROA violations as actionable under 15 U.S.C. § 45

12

fails.

The FTC would have this Court assume the FTC has jurisdiction to split the exempt status and non-profit baby in half, and then zero in on the non-profit prong searching for facts concerning its operation. But the statute itself paints a different scenario and precludes this factual operational fishing expedition if the non-profit corporation is so *organized*.   If the corporation is so organized, the FTC's inquiry ends.   If it is tax-exempt, the FTC's inquiry ends.

Fundamentally, it is a question of whether Congress intended to grant the FTC an independent power to determine its own jurisdiction, expanding it beyond anything Congress ever contemplated. There is no implicit authority of the FTC to insert an operational test in the language of 15 U.S.C. § 44. The FTC's Amended Complaint pleads against YFLF's operation, not organization as a nonprofit organization and for such reason alone, it cannot prevail.   As such, the case against Individual Defendant Thompson, who has been included only because of his former positions as a director and officer of YFLF, must also fail.

### 5.   FTC Cited Case Law Is Unavailing.

The FTC no doubt has anticipated Defendant's Argument.   It first attempted to preempt Defendant's argument in its prior Motion for a TRO. See ECF No. 3, PageID.139-42.   It cites a few cases there in support of the proposition that the FTC's jurisdiction over non-profits is established where the "evidence indicates that

Youth Financial's "congeries of activities" confer far more than *de minimis* or merely presumed economic benefits" for the profit of the common enterprise. *Id*.

The "congeries of activities" language is based on *California Dental Ass'n v. F.T.C.,* 526 U.S. 756, 119 S. Ct. 1604, 143 L. Ed. 2d 935 (1999). The FTC cites to this case but not to its facts. ECF No. 3, PageID.136. In that case, the Court considered the non-profit California Dental Association's (CDA) advertisements on behalf of its 19,000-member dentists. The non-profit association acted on behalf of its for-profit dentist defendants.   That is the key factual point supporting the legal holding.

The court found that "[t]hrough for-profit subsidiaries, the CDA provides advantageous insurance and preferential financing arrangements for its members, and it engages in lobbying, litigation, marketing, and public relations for the benefit of its members' interests. This *congeries of activities* confers far more than *de minimis* or merely presumed economic benefits on CDA members; the economic benefits conferred upon the CDA's profit-seeking professionals plainly fall within the object of enhancing its members' "profit," which the FTC Act makes the jurisdictional touchstone." 526 U.S. at 767.

Factually, CDA and YFLF are miles apart. CDA is a membership organization.   YFLF is not. It is established on a Directorship basis. CDA works to enhance the profit of its members. YFLF works to enhance the credit of customers. Its customers are not "for-profit" entities like dentists in the dental business but are

14

simply individuals trying to get out of debt. These critical factual distinctions make mechanical citations to *California Dental Ass'n* unpersuasive as a basis to extend the FTC's authority to non-profits generally and YFLF specifically.  The FTC's invocation of *California Dental Ass'n* simply does not apply to a Directorship corporation such as YFLF.

The FTC also cites an 8th Circuit case, *Cmty. Blood Bank of the Kansas City Area v. FTC*, 405 F.2d 1011, 1017-18 (8th Cir. 1969). This is an interesting case. The Court rejected the Commission's desire to expand its jurisdiction to non-profits generally.   "Contrary to the position of the Commission, Congress did not intend to bring within the reach of the Commission any and all nonprofit corporations regardless of their purposes and activities. If such were the intent of Congress we believe it would have followed the pattern of the Sherman and Clayton Acts. The limiting language of § 4 indicates an intention that the question of the jurisdiction over the corporations or other associations involved should be determined on an ad hoc basis." 405 F.2d at 1018.

The Court also quotes then FTC Commissioner Elman for perspective:

It is conceded that the corporate respondents are corporations validly organized and existing under nonprofit-corporation statutes; that they have been granted tax exempt status by the Internal Revenue Service; and that they do not distribute any part of their funds to, and are not organized for the profit of, members or shareholders. Any profit realized in their operations is devoted exclusively to the charitable purposes of the corporation. They have a paid staff, of course, but none of the officers or directors is paid. There is no contention that any of the corporate respondents is a device or instrumentality of individuals or firms who seek monetary gain through the nonprofit corporation." 405

15

F.2d 1019–20.

A review of the Plaintiff's Amended Complaint fails to allege that Thompson specifically received any monetary gain from YFLF activities. And, as previously noted, he was an unpaid volunteer officer. Nor does it allege that Thompson's legal counsel advising defendant corporation, is somehow an instrumentality to seek gain through YFLF.

The FTC also string cites a few other cases including *FTC v. Ameridebt, Inc.*, 343 F. Supp. 2d 451, 460 (D. Md. 2004). The decision in that case was based on the fact that the defendants apparently conceded that "the FTC Act may be applicable regardless of an entity's status as a 'non-profit'" – a concession Thompson has not made here.

Of course, the First Circuit's *Zimmerman v. Cambridge Credit Counseling Corp.*, decision might be argued as controlling or broadly applied to somehow open the door for the FTC to undertake an "ad hoc determination" directly challenging YFLF's non-profit status.   Yet, the FTC has failed to even plead such a specific count in its Amended Complaint.[1]

---

1 The FTC's failure to plead is easily distinguished from the *Zimmerman* trial court's ultimate determination on remand from the First Circuit. In that remand, the trial court found that Defendant's failure to respond to requests to admit warranted the court ruling that the requests were admitted. As a result of this awkward procedural ruling, Defendants were deemed to have admitted that they did not operate as a non-profit.  But such a procedural posture there lends no support for the FTC here.  *Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F. Supp.

16

Finally, turning to the Sixth Circuit, the FTC in a telling footnote alluding to non-profits states: "Numerous courts in this district and throughout the Sixth Circuit have granted or affirmed *ex parte* temporary injunctive relief similar to that requested here." ECF No. 3, PageID.136, fn 20.   In plain English, the FTC cites to no Sixth Circuit authority *on the merits* for its broad claim of FTC jurisdiction over YFLF or its one-time unpaid volunteer officer Thompson.

A case not cited by the FTC is the Honorable Robert J. Cleland opinion in *Bahdouchi v. Third Eye, Inc.,* No. 04-CV-12997-DT, (January 21, 2005) "The issue of whether Defendants misled the IRS or are not properly carrying out their purported philanthropic mission is not properly before the court. That issue is between Defendants and the IRS. There may be doubt as to whether Defendants continue to deserve their tax-exempt status, but this Plaintiff has no standing to challenge Defendants' status." Doc # 20 Filed 01/21/05 Pg. 11 of 14; PageID.560. See Exhibit "C" to Defendant *Thompson's Response In Opposition To Plaintiff's Motion For Preliminary Injunction And To Dissolve The TRO*, ECF No. 50, PageID.3408.

---

2d 254, 277 (D. Mass. 2008), aff'd sub nom. *Zimmerman v. Puccio,* 613 F.3d 60 (1st Cir. 2010).

17

Therefore, returning to the main argument, since none of the alleged CROA violations in the Plaintiff's Amended Complaint apply to YFLF, none can possibly apply to Thompson as its President. As President of a non-profit and tax-exempt organization, Mr. Thompson has no duty whatsoever to comply with CROA.

Only the IRS, not the FTC, has jurisdiction to challenge the IRS's determination of YFLF as an exempt entity. The FTC cannot plead YFLF's way into any violation of 15 U.S.C. §1679a(3)(B)(i) by mere disagreement with the IRS's exclusive determination. The IRS has not been sleeping. It can police its own determinations.[2] As such, the Amended Complaint's numerous counts pertaining to CROA must fail as a matter of law. Plaintiff has no likelihood of success on the merits regarding any of these CROA related claims.

## CONCLUSION

For the reasons state herein, Defendant, Gerald Thompson, prays this Court dismiss Plaintiff's Amended Complaint, (ECF No. 121), Counts I-XVI against

---

2  IRS reviews are described in a series of documents issued in May, 2006. Internal Revenue Service, Executive Summary Credit Counseling Compliance Project, 2006 TNT 94-10 (May 15, 2006); Internal Revenue Service, Credit Counseling Compliance Project Frequently Asked Questions, 2006 TNT 94-11 (May 15, 2006); IRS News Release IR-2006-80 (May 15, 2006), IRS Takes Steps on Credit Counseling Groups Following Widespread Abuse, at 2006 TNT 94-9. See also, Treasury Inspector General for Tax Administration, Final Audit Report—Abuses in the Tax-Exempt Credit Counseling Industry Are Being Addressed, but Further Actions Are Needed To Ensure Overall Industry Compliance (Audit # 200510020), at 2006 TNT 100-19 (May, 2006).

Thompson in connection with YFLF as its former unpaid volunteer officer or President, pursuant to Fed. R. Civ. P. 12(b)(6) and E.D. Mich. LR 7.1.

<div style="margin-left: 40%;">

Respectfully Submitted,
PENTIUK, COUVREUR & KOBILJAK, P.C.

By: */s/Kerry L. Morgan*                    
Kerry L. Morgan (P32645)
*Attorneys for Defendant, Gerald Thompson*
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
Telephone: 734-281-7100
Facsimile: 734-281-7102
Email: Kmorgan@pck-law.com
Dated: April 10, 2023

</div>

## CERTIFICATE OF SERVICE

I hereby certify that, on April 10, 2023, a true and correct copy of the foregoing was served on all counsel of record via ECF.

<div style="margin-left: 40%;">

/s/ *Kerry L. Morgan*            
Kerry L. Morgan

</div>

19