# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, | Case No. 2:22-cv-11120-BAF-APP |
| Plaintiff, | Hon. Bernard A. Friedman |
| v. | |
| **FINANCIAL EDUCATION SERVICES, INC.**, *et al.*, | |
| Defendants. | |

# FTC'S MEMORANDUM IN OPPOSITION TO DEFENDANT GERALD THOMPSON'S MOTION TO DISMISS

i

## ISSUE PRESENTED

Whether the detailed factual allegations set forth in the FTC's First Amended Complaint, when taken as true, set forth a plausible claim for (a) injunctive and monetary relief under Sections 13(b) and 19 of the FTC Act for Defendant Gerald Thompson's violations of Section 5 of the FTC Act, multiple provisions of the Credit Repair Organizations Act, multiple provisions of the FTC's Telemarketing Sales Rule, Section 604(f)(2) of the Fair Credit Reporting Act, and Section 521 of the Gramm-Leach-Bliley Act, and (b) civil penalties for Defendant Thompson's violations of the Fair Credit Reporting Act and the Gramm-Leach-Bliley Act.

## CONTROLLING AUTHORITIES

The controlling or otherwise most useful authorities are:

- Fed. R. Civ. P. 8(a)
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
- *City. Blood Bank of the Kansas City Area v. FTC*, 405 F.2d 1011 (8th Cir. 1969
- *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014)
- *FTC v. Fin. Educ. Servs.*, 2023 U.S. Dist. LEXIS 23927 (E.D. Mich. Feb. 13, 2023
- *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir. 2005)

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................1

II.  LEGAL STANDARD FOR MOTION TO DISMISS ........................1

III.  THE FTC'S COMPLAINT STATES A CLAIM FOR WHICH RELIEF CAN BE GRANTED ................................................................3

    A. The FTC's Amended Complaint Adequately Pleads that Defendants Violated Section 5 of the FTC Act, CROA, the TSR, the FCRA, and the GLB Act.....................................................................4

    B. The FTC Has Jurisdiction over Defendant YFL ...........................7

       1. The FTC Has Jurisdiction over Defendant YFL for Violations of the FTC Act and the TSR ................................................................8

       2. The FTC Has Jurisdiction over Defendant YLF for Violations of CROA ................................................................12

       3. The FTC Has Jurisdiction over Defendant YFL for Violations of the FCRA................................................................14

       4. The FTC Has Jurisdiction over Defendant YFL for Violations of Section 521 of the GLB Act ................................................................15

    C. Defendant Thompson's Volunteer Status Is Not Relevant to His Liability ................................................................17

    D. Defendant Thompson Ignores His Status His Status and Authority to Control For-Profit Defendants .....................................................20

IV.  CONCLUSION................................................................22

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................1, 2

*Bahdouchi v. Third Eye, Inc.*,
    2005 U.S. Dist. LEXIS 62861 (E.D. Mich. Jan. 21, 2005) ..........................13

*Baker v. Family Credit Counseling Corp.*,
    440 F. Supp. 2d 392 (E.D. Pa. 2006)............................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................1, 2

*Bob Jones Univ. v. United States*,
    461 U.S. 574 (1982)....................................................................................8

*Burwell v. Hobby Lobby Stores, Inc.*,
    573 U.S. 682 (2014)..................................................................................15

*Cal. Dental Ass'n v. FTC*,
    526 U.S. 756 (1999)..............................................................................9, 11

*Cmty. Blood Bank of the Kansas City Area v. FTC*,
    405 F.2d 1011 (8th Cir. 1969) ..............................................................9, 11

*Daniel Chapter One v. FTC*,
    405 F. App'x 505 (D.C. Cir. 2010) ..............................................................10

*Daunt v. Benson*,
    999 F.3d 299 (6th Cir. 2021) ........................................................................2

*Fritz v. Charter Twp. of Comstock*,
    592 F.3d 718 (6th Cir. 2010) ......................................................................20

*FTC v. Ameridebt, Inc.*,
    343 F. Supp. 2d 451 (D. Md. 2004)............................................................10

*FTC v. Direct Mktg. Concepts, Inc.*,
   624 F.3d 1 (1st Cir. 2010)...................................................................4

*FTC v. E.M.A. Nationwide, Inc.*,
   767 F.3d 611 (6th 2014) ...............................................................4, 18

*FTC v. Fin. Educ. Servs.*,
   2023 U.S. Dist. LEXIS 23927 (E.D. Mich. Feb. 13, 2023) ...............2, 18, 20

*FTC v. Gill*,
   183 F. Supp. 2d 1171 (C.D. Cal. 2001).............................................10

*FTC v. Moses*,
   913 F.3d 297 (2d Cir. 2019) ............................................................18

*FTC v. Nat'l Comm'n on Egg Nutrition*,
   517 F.2d 485 (7th Cir. 1975) ........................................................9, 10

*FTC v. USA Fin., LLC*,
   415 Fed. Appx. 970 (11th Cir. 2011) ...............................................18

*FTC v. Winsted Hosiery Co.*,
   258 U.S. 483 (1922).........................................................................4

*Hobby Lobby Stores, Inc. v. Sebelius*,
   723 F.3d 1114 (10th Cir. 2013) .......................................................15

*King v. Capital One Bank (USA), N.A.*,
   2012 U.S. Dist. LEXIS 163562 (W.D. Va. Nov. 15, 2012).....................13

*Michaels Bldg. Co. v. AmeritrustCo., N.A.*,
   848 F.2d 674 (6th Cir. 1988) .............................................................6

*Moore v. Kayport Package Express*,
   885 F.2d 531 (9th Cir. 1989) .............................................................6

*Nieman v. NLO, Inc.*,
   108 F.3d 1546 (6th Cir. 1997) ...........................................................2

*Ohio Christian College*,
    80 F.T.C. 815 (1972) ....................................................................10

*Polacsek v. Debticated Consumer Counseling*,
    413 F. Supp. 2d 539 (D. Md. 2005)...........................................13

*United States v. Gold Unlimited, Inc.*,
    177 F.3d 472 (6th Cir. 1999) .........................................................5

*Wool v. Tandem Computers, Inc.*,
    818 F.2d 1433 (9th Cir. 1987) .......................................................6

*Zimmerman v. Cambridge Credit Counseling Corp.*,
    409 F.3d 473 (1st Cir. 2005)............................................8, 10, 13

## STATUTES, RULES, & MISCELLANEOUS

1 U.S.C. § 1 ...................................................................................15

15 U.S.C. § 44 .................................................................................9

15 U.S.C. § 45 .................................................................................3

15 U.S.C. § 45(a)(2)......................................................................8, 9

15 U.S.C. § 45(m)(1)(A)................................................................19

15 U.S.C. §§ 1679–1679j................................................................3

15 U.S.C. § 1679a(3) .....................................................................12

15 U.S.C. § 1679a(3)(B)(i) ............................................................13

15 U.S.C. § 1679b(a)(3)...................................................................5

15 U.S.C. § 1679b(b) .......................................................................5

15 U.S.C. § 1679c(a).........................................................................5

15 U.S.C. § 1679d(b)(2) ...............................................................................5

15 U.S.C. § 1679d(b)(4) ...............................................................................5

15 U.S.C. § 1679e(b) ....................................................................................5

15 U.S.C. § 1679e(c) .....................................................................................5

15 U.S.C. § 1679h(b)(2)(B) .........................................................................12

15 U.S.C. § 1681a(b) ...................................................................................14

15 U.S.C. § 1681b(f) ...............................................................................5, 14

15 U.S.C. § 1681b(f)(2) .................................................................................3

15 U.S.C. § 1681e(a) .....................................................................................5

15 U.S.C. § 1681s(a)(1) ...............................................................................14

15 U.S.C. § 1681s(a)(2)(A) ..........................................................................18

15 U.S.C. § 1692*l*(a) .............................................................................15, 19

15 U.S.C. § 6105(a) .......................................................................................8

15 U.S.C. § 6821 ...........................................................................................3

15 U.S.C. § 6821(a) .......................................................................................5

15 U.S.C. § 6822(a) .................................................................................15, 19

15 U.S.C. § 6824 .........................................................................................16

15 U.S.C. § 6824(a) .....................................................................................16

15 U.S.C. § 6824(b) .....................................................................................16

16 C.F.R. Part 310 .........................................................................................3

16 C.F.R. § 310.3(a)(2)(iii) ...........................................................................5

16 C.F.R. § 310.3(a)(2)(vi) ...........................................................................5

16 C.F.R. § 310.4(a)(2) .................................................................................5

Fed. R. Civ. P. 8(a)(2) ...................................................................................2

Fed. R. Civ. P. 9(b) .......................................................................................6

Mich. Comp. Laws § 450.2131(2) ..............................................................11

Paul M. Schwartz, *Preemption and Privacy*, 118 YALE L.J. 902 (2009) ...............16

Vincent Serpico, Denise Landers & Damon A. Terrill, *Making Sense of U.S. State Data Privacy Law*, 119 BANKING L. J. 462 (May 2002) .........................................16

## I.    INTRODUCTION

Plaintiff, the Federal Trade Commission ("FTC"), hereby submits its

opposition to Defendant Gerald Thompson's Motion to Dismiss the FTC's First

Amended Complaint.  (ECF No. 129).  Thompson's Motion is unpersuasive

because the FTC's Amended Complaint (ECF No. 121) sets forth sufficient facts

that, taken as true, would establish each of the law violations and the culpability of

Defendant Thompson.  Defendant Thompson, who relies on virtually no cases that

even remotely support his position, misconstrues the relevant caselaw regarding

the FTC's jurisdiction over nonprofits with respect to the statutes and rules at issue

in this case.  Moreover, the motion to dismiss should fail because it does not

contest Thompson's liability for FES or the other corporate defendants other than

YFL.  Accordingly, the Court should deny Defendant Thompson's motion to

dismiss.[1]

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss, a complaint need only allege "enough facts

to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).  In deciding a motion to dismiss, the court

"must take all of the factual allegations in the complaint as true." *Ashcroft v.

---

[1] The FTC respectfully submits that this motion may be determined solely on the papers, pursuant to E.D. Mich. LR 7.1(f)(2).

*Iqbal*, 556 U.S. 662, 678 (2009); *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021); *FTC v. Fin. Educ. Servs.*, 2023 U.S. Dist. LEXIS 23927, at *4 (E.D. Mich. Feb. 13, 2023) (ECF 114, PageID.6153-65).  Generally, a court considering a Rule 12(b)(6) motion "may only consider the pleadings."  *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997); *Fin. Educ. Servs.*, 2023 U.S. Dist. LEXIS 23927, at *9 n.2.

Rule 8(a), the general rule of pleading, states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," it "does not require 'detailed factual allegations.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The plausibility standard is not a "probability requirement" and a plaintiff need only "plea[d] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.[2]

---

[2] Defendant Thompson sometimes misconstrues the standard for a Rule 12(b)(6) motion, claiming, for example, that it will be "a tough legal uphill slog" for the FTC to produce evidence that he believes is relevant.  (ECF No. 129 at 10 (PageID.6432).  The ease with which the FTC will prove its claims is not relevant to a motion to dismiss.

## III.   THE FTC'S AMENDED COMPLAINT STATES A CLAIM FOR WHICH RELIEF CAN BE GRANTED

The factual allegations set forth in the FTC's Amended Complaint satisfy every element required to establish a plausible claim that Defendant Thompson violated Section 5 of the FTC Act, 15 U.S.C. § 45, multiple provisions of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679–1679j, multiple provisions of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, Section 604(f)(2) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f)(2), and Section 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6821, and that he is liable for injunctive and monetary relief and civil penalties.

Defendant Thompson does not challenge the Amended Complaint's factual allegations that the Corporate Defendants violated Section 5 of the FTC Act, CROA, the TSR, the FCRA, or the GLB Act.  Instead, he argues, first, that the FTC lacks jurisdiction over a separate defendant, Youth Financial Literacy Foundation ("YFL"), for whom he was an officer, and, therefore, cannot be held individually liable.  Second, he argues that because he was only an unpaid volunteer, he cannot be held individually liable for injunctive or monetary relief or civil penalties.  Neither of these arguments has any legal foundation.  Finally, Defendant Thompson ignores the fact that the Amended Complaint also alleges that he was an officer of, and had authority to control, for-profit entities.

3

**A. The FTC's Amended Complaint Adequately Pleads that Defendants Violated Section 5 of the FTC Act, CROA, the TSR, the FCRA, and the GLB Act**

To state a claim that Defendants, including Defendant Thompson, violated Section 5(a) of the FTC Act, the FTC must allege that Defendants made a material representation likely to mislead consumers acting reasonably under the circumstances. *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630-31 (6th Cir. 2014). A "material" misrepresentation is one that is "likely to affect a consumer's decision to buy a product or service." *Id.* at 631. Further, a representation is deceptive if the maker of the representation lacks a reasonable basis for the claim. *See FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 8 (1st Cir. 2010). The FTC need not allege that Defendants' misrepresentations were made with an intent to defraud or deceive or were made in bad faith. *See*, *e.g.*, *E.M.A. Nationwide*, 767 F.3d at 631. It is also a violation of Section 5 of the FTC Act to provide others with the means and instrumentalities to commit deceptive acts or practices. *See FTC v. Winsted Hosiery Co.*, 258 U.S. 483, 494 (1922).

To establish that an investment opportunity is, in fact, an illegal pyramid scheme, the FTC must allege that the scheme is characterized by "the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to

4

ultimate users." *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 480 (6th Cir. 1999). Meanwhile, to establish violations of CROA, the TSR, Section 604(f)(2) of the FCRA, or Section 521 of the GLB Act, the FTC must allege that Defendants engaged in the specific practices set forth in the statute or rule.[3]

---

[3] In particular, CROA (a) prohibits credit repair organizations from making or using "any untrue or misleading representation of the services of the credit repair organization," 15 U.S.C. § 1679b(a)(3); (b) prohibits taking advance fees for credit repair services, *id*. § 1679b(b); and (c) requires credit repair organizations to make specific disclosures and provide consumers with written contracts that comply with the requirements of the statute. *Id*. §§ 1679c(a), 1679d(b)(2), 1679d(b)(4), 1679e(b), and 1679e(c). Meanwhile, the TSR prohibits sellers and telemarketers from misrepresenting any material aspect of (a) the performance, efficacy, nature, or central characteristics of goods or services that are subject of a sales offer or (b) an investment opportunity. 16 C.F.R. §§ 310.3(a)(2)(iii) and 310.3(a)(2)(vi). The TSR also prohibits the taking of advance fees for credit repair services. *Id*. § 310.4(a)(2). Section 604(f) of the FCRA, 15 U.S.C. § 1681b(f), provides that "[a] person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section [604]; and (2) the purpose is certified in accordance with Section 607 [§ 1681e] by a prospective user of the report through a general or specific certification." Meanwhile, Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a), states that prospective users must "identify themselves, certify the purpose for which the information is sought, and certify that the information will be sued for no other purpose." And Section 521(a) of the GLB Act, 15 U.S.C. § 6821(a), prohibits "obtain[ing] or attempt[ing] to obtain . . . customer information of a financial institution relating to another person," by, among other things "making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution."

Here, the Amended Complaint's factual allegations detail how Defendants,[4]

acting as a common enterprise (*id*. at 11 ¶ 20 (PageID.6337)), violated Section 5 of

the FTC Act, CROA, the TSR, the FCRA, and the GLB Act by:

- making deceptive claims regarding their credit repair services (*id*. at 12-18 ¶¶ 22-30 (PageID.6338-44), 22-23 ¶¶ 46-48 (PageID.6348-49));

- charging unlawful advance fees before providing credit repair services (*id*. at 18-19 ¶¶ 31-33 (PageID.6344-45));

- failing to provide and obtain written contracts detailing the terms of their credit repair services (*id*. at 19-20 ¶ 35 (PageID.6345-46));

- failing to provide legal notices required under federal law (*id*. at 20 ¶¶ 36-37 (PageID.6346));

- unlawfully obtaining consumers' credit reports (*id*. at 21-22 ¶¶ 38-45 (PageID.6347-48));

- making deceptive claims regarding their investment opportunity (*id*. at 23-29 ¶¶ 50-55 (PageID.6349-55), 35 ¶ 72 (PageID.6361));

---

[4] Defendant Thompson complains that the FTC's allegations "simply lump Thompson in as 'Defendant.'" (ECF No. 129 at 12, PageID.6424.) In the context of evaluating whether a complaint satisfies the more stringent standards of Fed. R. Civ. P. 9(b), courts have held that "the rule may be relaxed where information is only within the opposing party's knowledge." *Michaels Bldg. Co. v. AmeritrustCo., N.A*., 848 F.2d 674, 680 (6th Cir. 1988). And in the context of corporate fraud, courts have held that "it is reasonable to presume" that corporate acts "are the collective actions of the officers." *Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1440 (9th Cir. 1987). Thus, courts have held that "the allegations should include the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989); *Michaels Bldg. Co.*, 848 F.2d at 680 ("the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.").

- operating their investment opportunity as an illegal pyramid scheme (*id*. at 29-30 ¶¶ 56-57 (PageID.6355-56), 31-35 ¶¶ 61-72 (PageID.6357-61)); and

- providing others with the means and instrumentalities to engage in deceptive acts and practices.  (*Id*. at 30-31 ¶¶ 58-60 (PageID.6356-57).)

And the Amended Complaint alleges that Defendants agreed to operate their business in compliance with the FCRA and the GLB Act, (*id*. at 19 ¶ 34 (PageID.6345), 21 ¶ 41 (PageID.6347)), and thus committed violations of those statutes with the requisite knowledge necessary for civil penalties.  (*Id*. at 52 ¶ 134 (PageID.6378), 55 ¶ 141 (PageID.6381).)

Contrary to Thompson's arguments, liability for these violations endure, even if the individuals responsible organize one of their companies as a nonprofit entity under false pretenses or call themselves "volunteers."

**B. The FTC Has Jurisdiction over Defendant YFL**

The bulk of Defendant Thompson's argument is premised on his faulty claim—unsupported by citations to any authority—that the FTC lacks jurisdiction over Defendant YFL because it was organized as a nonprofit entity.[5]  As a preliminary matter the FTC does not dispute that YFL was organized as a Michigan nonprofit corporation (*see* ECF No. 121 at 7, PageID.6333) or that it is registered with the IRS as a 501(c)(3) organization.  (*See* ECF No. 3 at 5,

_____

[5] YFL itself has not advanced these arguments in a motion dismiss this Amended Complaint. (*See* ECF No. 133.)

PageID.83.) Neither, contrary to Defendant Thompson's assertions, is the FTC challenging those designations or asking this Court to negate the IRS's determination.[6] Rather YFL's organization under Michigan's nonprofit laws and its 501(c)(3) status are irrelevant to the FTC's jurisdiction. As the case law uniformly holds, the FTC's jurisdiction over nonprofits is activity and not status based.

### 1. The FTC Has Jurisdiction over Defendant YFL for Violations of the FTC Act and the TSR

Contrary to Defendant Thompson's assertions, the FTC Act[7] does not expressly exclude companies that are registered as nonprofits from its jurisdiction. Instead, the FTC's jurisdiction is written in the positive, *i.e.*, the FTC "is hereby empowered and directed to prevent persons, partnerships, or corporations . . . from using . . . unfair or deceptive acts or practices in or affecting commerce." 15

---

[6] Whether an entity is entitled to federal tax-exempt status is a determination that is committed, in the first instance, to the IRS. *See Bob Jones Univ. v. United States*, 461 U.S. 574, 596-97 (1982). But it is "common for courts and administrative agencies to examine whether an entity actually operates as a nonprofit, irrespective of its tax-exempt status." *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473, 478 (1st Cir. 2005). Similarly, state courts frequently inquire into whether an entity actually operates as a nonprofit, notwithstanding its organizational status, to determine whether the entity is entitled to tax-exemptions reserved for nonprofits. *Id.* Thus, Defendant Thompson's frequent claim that Michigan's Nonprofit Corporation Act is dispositive is without legal support.

[7] Although Thompson apparently concedes YFL is within the TSR's jurisdiction, generally, the FTC's jurisdiction with respect to the TSR follows its jurisdiction with respect to the FTC Act. See 15 U.S.C. § 6105(a).

U.S.C. § 45(a)(2).  Section 4 of the FTC Act, 15 U.S.C. § 44, defines

"corporations" subject to the FTC's jurisdiction as "any company. . . which is

organized to carry on business for its own profit or that of its members."  This

definition does not restrict the FTC's regulatory authority over non-profit

corporations merely because of the charter of such corporations.

     "Congress did not intend to provide a blanket exclusion of all non-profit

corporations, for it was also aware that corporations ostensibly organized not-for-

profit . . . were merely vehicles through which a pecuniary profit could be realized

for themselves or their members." *Cmty. Blood Bank of the Kansas City Area v.*

*FTC*, 405 F.2d 1011, 1017-18 (8th Cir. 1969);[8] *see also Cal. Dental Ass'n v. FTC*,

526 U.S. 756, 767-68 (1999) (because "[n]onprofit entities organized on behalf of

for-profit members have the same capacity and derivatively, at least, the same

incentives as for-profit organizations to engage in unfair methods of competition or

unfair and deceptive acts," the Court had "no difficulty in concluding that the

Commission has jurisdiction over the [nonprofit]").  Accordingly, courts have

frequently held that defendants may be subject to the FTC's jurisdiction despite

their organization as a nonprofit.  *E.g.*, *FTC v. Nat'l Comm'n on Egg Nutrition*,

---

[8] Contrary to Defendant Thompson's arguments, the fact that the Eighth Circuit, after examining the specific facts of that case, determined that Community Blood Bank was outside the scope of the FTC's jurisdiction does not invalidate statutory test of Section 4 or the rule adopted by the Court for determining whether a nonprofit was carrying on business "for its own profit or that of its members."

517 F.2d 485, 487-88 (7th Cir. 1975) (holding nonprofit subject to FTC jurisdiction because it was organized for the profit of its members "even though it pursues that profit indirectly"); *Daniel Chapter One v. FTC*, 405 F. App'x 505, 506 (D.C. Cir. 2010) ("Because DCO operates, in substance, as a for-profit entity generating sales revenue and providing 'far more than *de minimis* or merely presumed economic benefits' to [the defendant] and his wife, the Commission had jurisdiction."); *FTC v. Ameridebt, Inc.*, 343 F. Supp. 2d 451, 460 (D. Md. 2004) ("Although Ameridebt is incorporated as a nonstock corporation with tax-exempt status, the Court finds this insufficient to insulate it from the regulatory coverage of the FTC Act."); *FTC v. Gill*, 183 F. Supp. 2d 1171, 1184 (C.D. Cal. 2001) ("[W]hile certain nonprofit corporations are exempt from liability for violations of section 5(a)(1) of the FTC Act, the exemption does not apply to sham corporations that are the mere alter ego of the contemnor."); *Ohio Christian College*, 80 F.T.C. 815, 849 (1972) (FTC has jurisdiction over a corporation that exists as a mere shell, cloaking for-profit activities).

In conducting this analysis, courts do not rest solely on a company's organization as a nonprofit or receipt of tax-exempt status by the IRS,[9] but, rather,

---

[9] The reason these facts alone are not determinative is because courts recognize that nonprofit and tax-exempt status are often ministerial designations made on the often unverified representations of the organizer. *See, e.g.*, *Zimmerman*, 409 F.3d at 476-77 ("[T]he IRS usually grants section 501(c)(3) status based solely on representations made by the applying entity. . . . In fact, the IRS' subsequent

they conduct a substantive inquiry looking at such factors as whether funds are distributed or inure to the profit of members or shareholders, or whether profit realized in the corporation's operations is devoted exclusively to charitable purposes. *Cmty. Blood Bank*, 405 F.2d at 1019. Courts also examine whether the nonprofit engages in "congeries of activities" that confer "far more than *de minimis* or merely presumed economic benefits" on its members. *Cal. Dental Ass'n*, 526 U.S. at 767.

Here, the Amended Complaint contains the following factual allegations:

- At all times relevant to this Complaint, acting alone or in concert with others, Youth Financial has marketed and sold credit repair services and investment opportunities to consumers throughout the United States (ECF No. 121 at 8 ¶ 12 (PageID.6334)); and

- At all times relevant to this Complaint, Youth Financial has carried on business for its own profit or that of its members. (*Id*.)

Accepting these factual allegations as true for purposes of the motion to dismiss, they satisfy both the express statutory definition of "corporation" set forth in Section 4 of the FTC Act and the uniform case law interpreting that section. Accordingly, the FTC and the Court have jurisdiction over Defendant YFL for its

---

notification that an entity has qualified for tax-exempt status contains a disclaimer stating that the IRS has made its determination based solely on representations provided to it by the party seeking the status."); Mich. Comp. Laws § 450.2131(2) (if a submitted document "substantially conforms to the requirements of [the Nonprofit Corporation Act], the administrator *shall* endorse on it the word 'filed' with his or her official title and the dates of receipt and of filing, and shall file and index the document") (emphasis added).

violations of Section 5 of the FTC Act and multiple provisions of the TSR, and, therefore, also over its principal Defendant Thompson.

### 2. The FTC Has Jurisdiction over Defendant YFL for Violations of CROA

The Section 4 analysis discussed above has no bearing on the FTC's *jurisdiction* with respect to CROA—Section 410(b)(2)(B) of CROA, 15 U.S.C. § 1679h(b)(2)(B), provides that the FTC can enforce CROA "without regard to whether the credit repair organization meets any other jurisdictional tests in the Federal Trade Commission Act." Instead, relevant here is whether Defendant YFL is a "credit repair organization" in the first instance, and thus falls within the scope of CROA. Contrary to Defendant Thompson's argument, although Defendant YFL may be a 501(c)(3) entity, it is still a "credit repair organization" subject to CROA.

Section 403(3) of CROA, 15 U.S.C. § 1679a(3), defines "credit repair organization" to mean any person or entity

> who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

Importantly, CROA excludes from the definition of "credit repair organization" "any nonprofit organization which is exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986." 15 U.S.C. § 1679a(3)(B)(i).

In *Zimmerman v. Cambridge Credit Counseling Corp.*, the First Circuit held that CROA's nonprofit organization exemption requires both that (1) the organization "actually operates as a nonprofit entity" and (2) it holds 501(c)(3) status. 409 F.3d at 475. Other courts considering this issue have found *Zimmerman*'s ruling persuasive. *See King v. Capital One Bank (USA), N.A.*, 2012 U.S. Dist. LEXIS 163562, at *5 n.3 (W.D. Va. Nov. 15, 2012); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 405 (E.D. Pa. 2006); *Polacsek v. Debticated Consumer Counseling*, 413 F. Supp. 2d 539, 550 (D. Md. 2005).[10]

As discussed above, the Amended Complaint alleges that "Youth Financial has carried on business for its own profit or that of its members." (ECF No. 121 at 8 ¶ 12 (PageID.6334).) Accepting this factual allegation as true, Defendant YFL

---

[10] The only case cited by Defendant Thompson that he suggests is supportive of his arguments, *Bahdouchi v. Third Eye, Inc.*, 2005 U.S. Dist. LEXIS 62861 (E.D. Mich. Jan. 21, 2005), concerned an early iteration of the Corporate Defendants and was decided under Rule 56. But this case has no bearing on Section 403(3)(B)(i)'s requirement that exemption from CROA requires both 501(c)(3) status and a determination that it "actually operates as a nonprofit entity." The issue in *Bahdouchi* was whether the plaintiff had standing to challenge the IRS's determination that the defendant was a tax-exempt entity, *id.* at *5-13, something the FTC *is not doing* here. And *Bahouchi* was decided before the First Circuit's decision in *Zimmerman*.

fails the first *Zimmerman* prong of Section 403(3)(B)(i), namely that it does not

"actually operate[] as a nonprofit entity." Accordingly, Defendant YFL is a "credit

repair organization" subject to CROA.

### 3. The FTC Has Jurisdiction over Defendant YFL for Violations of the FCRA

The FCRA applies to Defendant YFL notwithstanding its nominal nonprofit

or tax-exempt status. Section 604(f) of the FCRA, 15 U.S.C. § 1681b(f), prohibits

any person from using or obtaining a consumer credit report unless that person has

a permissible purpose that is certified in accordance with Section 607 of the

FCRA. Section 603(b) of the FCRA, 15 U.S.C. § 1681a(b), defines "person" to

mean "any individual, partnership, corporation, trust, estate, cooperative,

association, government or governmental subdivision or agency, or other entity."

Nothing in FCRA's definition of person excludes nonprofit or tax-exempt

organizations or limits entities to only those that "operate for its own profit or that

of its members." Indeed, the inclusion of governments and governmental agencies

demonstrates FCRA's applicability to nonprofit entities.

Moreover, Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1),

expressly provides that the FTC may enforce compliance against any "person that

is subject to enforcement by the [FTC] pursuant to this subsection, irrespective of

whether that person is engaged in commerce or meets any other jurisdictional tests

under the Federal Trade Commission Act" (emphasis added).  Accordingly,

Defendant YFL is subject to the FCRA.

### 4. The FTC Has Jurisdiction over Defendant YFL for Violations of Section 521 of the GLB Act

Finally, Section 521 of the GLB Act's prohibitions apply to Defendant YFL

notwithstanding its nominal nonprofit or tax-exempt status.  Section 521 of the

GLB Act applies to "any person."  Subtitle B of the GLB Act, in which Section

521 is located, does not define "person"; accordingly, courts look to the Dictionary

Act, 1 U.S.C. § 1.  *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682,

707 (2014).  The Dictionary Act states that the word "person" includes

"corporations, companies, associations, firms, partnerships, societies, and joint

stock companies, as well as individuals."  1 U.S.C. § 1.  And the Dictionary Act,

unlike Section 4 of the FTC Act, does not qualify corporations as operating "for its

own profit or that of its members."  *See Hobby Lobby Stores, Inc. v. Sebelius*, 723

F.3d 1114, 1129 (10th Cir. 2013) (Dictionary Act does not distinguish between for-

profit and non-profit corporations).  Nor does anything in Subtitle B of the GLB

Act suggest that Section 521 is limited to for-profit corporations.  Indeed, Section

522(a) of the GLB Act, 15 U.S.C. § 6822(a), provides that the FTC can enforce

violations of Section 521 with the same power and authority as it enforces

violations of the Fair Debt Collection Practices Act ("FDCPA").  And Section

814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), expressly provides that the FTC may

enforce compliance against any person "irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act" (emphasis added).

Defendant Thompson's argument that Section 524 of the GLB Act, 15 U.S.C. § 6824, somehow requires the FTC to defer to state law in determining what entities are subject to the GLB Act (*see* ECF No. 129 at 17-19, PageID.6429-31) is incorrect. Section 524 of the GLB Act serves as a partial federal preemption of inconsistent state laws. 15 U.S.C. § 6824(a). Section 521 of the GLB Act serves as a floor for protection, and Section 524 of the GLB Act allows states to adopt or maintain any "statute, regulation, order, or interpretation . . . if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under [Section 521 of the GLB Act] as determined by the Federal Trade Commission." 15 U.S.C. § 6824(b); *see generally* Paul M. Schwartz, *Preemption and Privacy*, 118 YALE L.J. 902 (2009); Vincent Serpico, Denise Landers & Damon A. Terrill, *Making Sense of U.S. State Data Privacy Law*, 119 BANKING L. J. 462 (May 2002).[11] Accordingly, Defendant YFL is subject to Section 521 of the GLB Act.

---

[11] In fact, given that nothing in Subtitle B of the GLB Act expressly limits the coverage of Section 521 of the GLB Act and Section 522(a) of the GLB Act (incorporating Section 814(a) of the FDCPA) expressly authorizes the FTC to enforce compliance of Section 521 of the GLB Act "irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests," Defendant

* * *

In short, the FTC has jurisdiction over Defendant YFL for violations of Section 5 of the FTC Act, the TSR, the FCRA, and Section 521 of the GLB Act. And because the FTC has jurisdiction over YFL, its officers, including Defendant Thompson, are also subject to the FTC's jurisdiction. Thus, the Court is authorized to impose the requested relief against him. Accordingly, the Amended Complaint states a claim for which relief can be granted, and the Court should deny Defendant Thompson's motion to dismiss.

## C. Defendant Thompson's Volunteer Status Is Not Relevant to His Liability

Defendant Thompson repeatedly asserts, without support, that he was an unpaid volunteer officer of YFL. (*See* ECF No. 129 at 5 (PageID.6417), 9 (PageID.6421), 12 (PageID.6424), 26 (PageID.6438), 27 (PageID.6439), 29 (PageID.6441)). His claim, even if it were alleged in the Amended Complaint (it is not), is not relevant to liability. Volunteers can be held liable for every law violation alleged in the Amended Complaint.

The Sixth Circuit has made clear that individual defendants may be liable for injunctive relief for corporate acts or practices if they: (1) participated directly in

---

Thompson's argument actually would make Michigan's Nonprofit Corporation Act inconsistent with Subtitle B of the GLB Act and, therefore, expressly preempted by Section 524 of the GLB Act.

the challenged conduct or (2) had the authority to control it.  *E.M.A. Nationwide*,

767 F.3d at 636; *Fin. Educ. Servs*., 2023 U.S. Dist. LEXIS 23927 at *5.  In

general, an individual's status as a corporate officer and his or her authority to sign

documents on behalf of the corporation gives rise to a presumption of control of a

small, closely held corporation, and it is this position that courts consider—not the

officer's wages.  *E.M.A. Nationwide*, 767 F.3d at 636; *Fin. Educ. Servs*., 2023 U.S.

Dist. LEXIS 23927 at *5-6.   Bank signatory authority also evidences authority to

control.  *See FTC v. USA Fin., LLC*, 415 F. App'x. 970, 974-75 (11th Cir. 2011).

Individual defendants are further liable for monetary relief for corporate

conduct if they had, or should have had, knowledge of the corporate defendant's

misrepresentations.  *E.M.A. Nationwide*, 767 F.3d at 636; *Fin. Educ. Servs*., 2023

U.S. Dist. LEXIS 23927 at *5.  Courts are clear that participation in corporate

affairs is probative of knowledge.  *FTC v. Moses*, 913 F.3d 297, 309 (2d Cir.

2019).

Finally, Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A),

authorizes the Court to award monetary civil penalties against an individual for

each knowing violation of the FCRA that constitutes a pattern or practice of

violations of the statute.  And Section 5(m)(1)(A) of the FTC Act calls for the

imposition of civil penalties where a defendant violated a trade regulation rule

"with actual knowledge or knowledge fairly implied on the basis of objective

circumstances that such act is unfair or deceptive and is prohibited by such rule."[12]

15 U.S.C. § 45(m)(1)(A).

Nowhere in the FTC Act, the FCRA, the GLB Act, the FDCPA, or case law is there any requirement that an individual defendant receive compensation as a condition for liability.  Nor does Defendant Thompson cite any legal support for this proposition.

Here, the facts as stated in the Amended Complaint set forth plausible liability for Defendant Thompson.  In particular, the Amended Complaint alleges that Defendant Thompson:

- is or was an owner, officer, director, or manager of YFL (ECF No. 121 at 10 ¶ 18 (PageID.6336);

- is or was an owner, officer, director, or manager of Defendant Financial Education Services, Inc. ("FES") (*id.*)

- is an authorized signatory on many of Defendants' bank accounts (*id.*); and

- formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  (*Id.* at 10-11 (PageID.6336-37))

---

[12] Section 522(a) of the GLB Act empowers the FTC to enforce Section 521 of the Act "in the same manner and with the same power and authority" it has under the Fair Debt Collection Practices Act ("FDCPA").  15 U.S.C. § 6822(a).  Meanwhile, Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), provides that all of the functions and powers of the FTC under the FTC Act are available to the FTC to enforce compliance by any person with the FDCPA, including the powers to the enforce provisions of the FDCPA in the same manner as if the violation had been a violation of an FTC trade regulation rule.

The Amended Complaint further alleges that, by virtue of his positions and otherwise, Defendant Thompson controlled one or more Corporate Defendants in the common enterprise and participated in, and had knowledge of, the unlawful activities alleged.  (*Id*. at 10-11 ¶¶ 18, 20 (PageID.6336-37).)

Accepting these factual allegations as true, the Amended Complaint states a claim for which relief can be made against Defendant Thompson.  As this Court held in denying a similar motion to dismiss filed by the Toloff Defendants, "the FTC's allegations (1) raise a plausible inference that [Defendant Thompson] ha[s] the authority to control the Business Entities, and (2) plausibly demonstrate that [he] possess[es], at the most basic level, "an awareness of a high probability of deceptiveness and intentionally avoided learning of the truth."  *Fin. Educ. Servs*., 2023 U.S. Dist. LEXIS 23927 at *8 (internal citations omitted).  The Amended Complaint's factual allegations, therefore, are "adequate to notify [Defendant Thompson] 'as to what claims are alleged' and contain 'sufficient factual matter to render' those claims 'plausible.'"  *Id*. at *8-9 (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  Accordingly, the Court should deny Defendant Thompson's motion to dismiss.

## D. Defendant Thompson Ignores His Status and Authority to Control For-Profit Defendants

The FTC finally notes that even if the Court were to find jurisdictional or scope of coverage issues with Defendant YFL, Defendant Thompson's motion still

20

warrants denial in full because, contrary to Defendant Thompson's claim that he

"is alleged only to be an officer of a corporation which is not organized to carry on

business for its own profit," (ECF No. 129 at 5 (PageID.6427); *see also id.* at 13

(PageID.6435) (arguing Thompson "has been included only because of his former

positions as a director and officer of [YFL])), he is also subject to individual

liability because of his role with Defendant FES.  The Amended Complaint alleges

that Defendant Thompson "is or was an owner, officer, director, or manager" of

Defendant FES and that "acting alone or in concert with others, he has formulated,

directed, controlled, had the authority to control, or participated in the acts and

practices" of the other corporate Defendants besides Defendant YFL.  (ECF No.

121 at 10-11 ¶ 18 (PageID.6336-37).)  Further, the Amended Complaint alleges

that Defendant FES and the other corporate Defendants are for-profit entities.  (*Id.*

at 5 ¶ 7 (PageID.6331) (FES is a Michigan corporation), 6 ¶ 8 (PageID.6332)

(United Wealth Services is a Michigan corporation), 6 ¶ 9 (PageID.6332) (VR-

Tech is a Michigan limited liability company), 7 ¶ 11 (PageID.6333) (CM Rent is a

Colorado company), 8 ¶ 13 (PageID.6334) (LK Commercial Lending is a

Michigan limited liability company), 9 ¶ 14 (PageID.6335) (Statewide Commercial

Lending is a South Carolina limited liability company).)  As for-profits, all of these

corporate Defendants are clearly subject to the FTC's jurisdiction under the FTC

Act, the TSR, CROA, the FCRA, and the GLB Act.  Thus, accepting these

allegations as true, Defendant Thompson is still subject to liability, and the Court

should deny Defendant Thompson's motion to dismiss.

## IV.    CONCLUSION

For the above reasons set forth herein, the FTC respectfully requests that the

Court deny Defendant Thompson's motion to dismiss in its entirety.

Dated:  May 1, 2023                           Respectfully submitted,

                                               /s/Gregory A. Ashe
                                              GREGORY A. ASHE
                                              K. MICHELLE GRAJALES
                                              JULIA E. HEALD
                                              Federal Trade Commission
                                              600 Pennsylvania Avenue NW
                                              Washington, DC 20580
                                              Telephone: 202-326-3719 (Ashe)
                                              Telephone: 202-326-3172 (Grajales)
                                              Telephone: 202-326-3589 (Heald)
                                              Facsimile: 202-326-3768
                                              Email:gashe@ftc.gov, mgrajales@ftc.gov,
                                                    jheald@ftc.gov

                                              DAWN N. ISON
                                              United States Attorney

                                              SUSAN K. DECLERCQ (P60545)
                                              Assistant United States Attorney
                                              211 W. Fort Street, Suite 2001
                                              Detroit, MI 48226
                                              Telephone: 313-226-9149
                                              Email: susan.declercq@usdoj.gov

                                              Attorneys for Plaintiff
                                              FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 1, 2023, a true and correct copy of **FTC'S MEMORANDUM IN OPPOSITION TO DEFENDANT THOMPSON'S MOTION TO DISMISS** was filed electronically with the United States District Court for the Eastern District of Michigan using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

*/s/Gregory A. Ashe*
Attorney for Plaintiff Federal Trade Commission