UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FEDERAL TRADE COMMISSION,**
  **Plaintiff,**                        Civil Action No. 22-cv-11120
                                        HON. BERNARD A. FRIEDMAN
vs.

**FINANCIAL EDUCATION SERVICES,** *et al.*,

  **Defendants.**

## DEFENDANT THOMPSON'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

Defendant Gerald Thompson moved the Court for an Order (ECF No. 129) dismissing the Plaintiff's Amended Complaint (ECF No. 121), under Fed. R. Civ. P. 12(b)(6) and E.D. Mich. LR 7.1. Plaintiff filed a Memorandum in Opposition (ECF No. 136) to which Defendant now replies. Defendant's motion to dismiss is grounded in the Congressional limitations statutorily imposed upon the FTC in the FTC Act itself which only extends FTC's jurisdiction to for-profit businesses.[1] It is also based on the Credit Repair Organization Act (CROA) which expressly denies the FTC jurisdiction over 501(c)(3) nonprofit corporations.[2]

---

[1] 15 U.S.C. §44 limits Plaintiff's jurisdiction under the FTC Act to prohibit, sue, and enjoin only those corporations "organized to carry on business for its own profit or that of its members."

[2] 15 U.S.C. §1679a(3)(B)(i) excludes from the definition of a Credit Repair Organization "any nonprofit organization which is exempt from taxation under section 501(c)(3) of title 26."

1

The FTC's response proposes a different and frankly irrelevant issue than Defendant has plead, arguing the FTC has stated a "plausible claim," sidestepping Defendant Thompson's jurisdictional issues presented. (ECF 136, PageID6785). Finally getting to the meat of the matter on page 9, the FTC re-argues that 15 U.S.C. §44 which includes only corporations organized to carry on business for its own profit, nevertheless "does not restrict the FTC's regulatory authority over nonprofit corporations merely because of the charter of such corporations." (ECF 136, PageID6801). The FTC then restates some case law in this area which the Defendant in his Motion anticipated and already argued why specific cases are not precedential.³ Since Defendant is limited to seven pages, it will not repeat those arguments, which demonstrates the FTC's claimed jurisdiction over YFLF (and 1.5 million other nonprofits), is meritless.⁴

---

³ The FTC's citation to F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 618 (6th Cir. 2014) as "controlling authority" is not precedential because in that case the FTC filed a motion for summary judgment and Defendants failed to file a brief in opposition to the motion, meaning the FTC's jurisdictional claim was not based on the merits.

⁴ The FTC's "go to" case is California Dental Ass'n v. F.T.C., 526 U.S. 756 (1999) in which the Supreme Court narrowly held that the best reading of the statute was that a nonprofit corporation **organized** on a membership basis and whose members were **for-profit** corporations came within the operative phrase "organized to carry on business" and therefore was within the FTC's statutory jurisdiction. This is the limit of the case. The Court did not open the door wide to some *ad hoc* undefined operational test as now claimed by the FTC. The Court looked to the "congeries of activities" which meant "the economic benefits conferred upon the CDA's *profit-seeking professionals*." 526 U.S. at 767-768. The FTC parrots the "congeries" term

Referring to a non-profit like YFLF, the FTC argues that the "charter of such corporation" does not bind the FTC. Yet this claim has no textual basis in any statute. It's not written there in section 44. The words "company", and the words "organized to carry on business" are written there in plain English. Congress used the word "organized" in the phrase "organized to carry on business." But in complete disregard of that text, the FTC nevertheless concludes that how an organization is organized does not restrict its authority. It even states that Thompson's position is "unsupported by citations to any authority," as if federal statutes were advisory. (ECF 136, PageID6799).

In the same breath while rejecting what the actual text of the statute says, it tries to reassure the Court that it is applying objective standards to determine if a nonprofit is really a nonprofit operationally. Neither the term "operationally" nor any equivalent meaning, however, is actually in the statute. The FTC notes on page 11 that it's conducting a "substantive inquiry" and looking at factors such as whether "funds are distributed or inure to the profit of members." It looks at whether profit realized "in the corporation's operations is devoted exclusively to charitable purposes." (ECF 136, pageID6803).

---

but dispenses with the need to also show the existence of "profit-seeking professional" members. (ECF 136, PageID6803). YFLF on the other hand, is not organized on a membership basis and does not serve for-profit professional corporations. *Cal Dental* is a very narrow precedent and entirely inapplicable here.

3

If we stop for a moment and think about it, those factors should look familiar. That word "inure" jumps out. Where did this come from? The inurement prohibition comes from 26 U.S.C. §501(c)(3) statutory language: "no part of the net earnings of which inures to the benefit of any private shareholder or individual…." See the big picture? The FTC is using IRS 501(c)(3) tax exemption criteria to determine if a non-profit is really a non-profit! Congress gave the IRS such authority. But neither the FTC Act nor CROA gave the FTC IRS powers.

What of the second assurance the FTC offers to know a non-profit when you see it—the "corporation's operations is devoted exclusively to charitable purposes." More IRS language. The IRS provides boilerplate to help state organized non-profits become federal tax exempt qualified. It includes:

> Said corporation is organized exclusively for charitable, religious, educational, and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code.[5]

So in a nutshell, the FTC's jurisdictional claim to investigate non-profits nationwide is grounded on the following legal quicksand: 1) the FTC rejects the "organizational" test actually stated in the statute; 2) it invents an operational test not in the statute; 3) it rejects 50 state laws defining "how is the organization

---

[5] https://www.irs.gov/charities-non-profits/suggested-language-for-corporations-and-associations

organized or chartered" criteria; 4) it hand picks an IRS "inurement test" and "charitable purposes" out of the Internal Revenue Code and nowhere found in the FTC Act or CROA; 5) it sidelines the IRS (the Agency with the real expertise); and, 6) it claims a power superior to the IRS to strike down state for-profit designations. All this we are asked to believe springs from Congressional language and court decisions.

Regarding CROA, the FTC admits that CROA excludes from the definition of a credit repair organization any nonprofit organization exempt from taxation under section 501(c)(3). (ECF 136, PageID6805 *citing* 15 U.S.C. §1679a(3)(B)(i)). Yet, it then claims contrary to the statute, that YFLF "is still a 'credit repair organization' subject to CROA." (ECF 139, PageID 6804). The FTC then cites *Zimmerman* as authoritative for the illogic of it all.

But Defendant Thompson has noted that *Zimmerman* isn't an FTC case. It does not examine FTC authority. More important, the only reason the court entertained jurisdiction to examine how the defendant corporation operated in that case is because the defendant failed to answer requests to admit which were then deemed admitted against it, regarding its operational matters. *Zimmerman* is not precedential in any context and not here.[6]

---

[6] Zimmerman v. Cambridge Credit Counseling Corporation, 409 F.3d 473 (1st. Cir. 2005).

Finally, to further buttress his Reply, Defendant thinks is important to grasp the scope and depth of what the FTC is claiming, i.e., -- Congress has established a five-member Commission to supersede and eclipse the Internal Revenue Service. This view leaves the FTC free and unrestrained to create and invent whatever criteria it desires in the crucible of litigation to determine when a nonprofit fails to be nonprofit enough. Having departed from state law nonprofit benchmarks we are left with the FTC commandeering select IRS regulations.

Had Congress granted any such jurisdiction to the FTC, we would expect to find the criteria by which the FTC could judge whether a nonprofit corporation was really a nonprofit or whether it was a sham corporation, stated in the statute. We would expect to find some guidance or elements or criteria. Yet none exist in either statute.[7]

Having dispensed with state law and claimed such a jurisdiction to sue based on no criteria except that which the FTC itself pleads, Defendants are placed in an impossible position of defending against "on the fly" *dejure* IRS standards

---

[7] The Supreme Court has not been shy about limiting the FTC's expansive and wide-ranging vision of its own jurisdiction in other contexts. See AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n, 141 S. Ct. 1341 (2021) (FTC Act does not authorize the Commission to seek, and a court to award, equitable monetary relief such as restitution or disgorgement.) Axon Enter., Inc. v. Fed. Trade Comm'n, 143 S. Ct. 890 (2023) (statutory review scheme in Federal Trade Commission Act did not displace District Court's federal-question jurisdiction to adjudicate constitutional claims).

imposed by an agency with no expertise in tax law. But not Defendants only. There are over 1.5 million nonprofits in the United States, accounting for $2.62 trillion in revenue and employing 10% of the workforce, or 16 million workers.[8] Can this Court say Congress meant the FTC has jurisdiction to investigate them all, or borrow IRS criteria here and there?

Congress granted the Internal Revenue Service jurisdiction to investigate sham nonprofit corporations *via* their federal tax status. The IRS has distinct tests it uses to evaluate organizations applying for tax exempt status and in revoking that status. The FTC is granted neither.

Congress left the determination of tax-exempt status to the IRS, and determining nonprofit status to the states.  Let the FTC be satisfied with policing CROA and the FTC Act as written and leave the policing of nonprofit and tax exempt status to those to whom it has been given.

                                                                                Respectfully Submitted,
                                        PENTIUK, COUVREUR & KOBILJAK, P.C.
                                        By: /s/Kerry L. Morgan
                                        Kerry L. Morgan (P32645)
                                        *Attorneys for Defendant, Gerald Thompson*
                                        2915 Biddle Avenue, Suite 200
                                        Wyandotte, MI 48192
                                        Telephone: 734-281-7100
                                        Fascimile: 734-281-7102
                                        Email: Kmorgan@pck-law.com

Dated: May 8, 2023

---

[8] https://www.zippia.com/advice/nonprofit-statistics/

## CERTIFICATE OF SERVICE

I certify that, on May 8, 2023, a true and correct copy of the foregoing was served on all counsel of record via ECF.

/s/ *Kerry L. Morgan*
Kerry L. Morgan