UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL TRADE COMMISSION,

        Plaintiff,                               Civil Action No. 22-cv-11120
                                                        HON. BERNARD A. FRIEDMAN

vs.

FINANCIAL EDUCATION
SERVICES, *et al.*,

        Defendants.
_____/

## OPINION AND ORDER DENYING GERALD THOMPSON'S MOTION TO DISMISS THE AMENDED COMPLAINT

I.    Introduction

The Federal Trade Commission commenced this consumer protection action against several individuals and businesses, among them, Gerald Thompson. The amended complaint alleges that Thompson acted as the "owner, officer, director, or manager" of the Youth Financial Literacy Foundation ("Youth Financial") and Financial Education Services, Inc. ("FES"). Together, these entities allegedly marketed credit repair services unlawfully and promoted an illegal pyramid scheme.

Before the Court is Thompson's motion to dismiss the amended complaint. (ECF No. 129). The FTC responded. (ECF No. 136). Thompson filed a reply.

(ECF No. 138).  The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).  For the following reasons, the Court denies the motion.

II.     Background

    *A.     Factual History*

Youth Financial and FES have been marketing credit repair services to consumers throughout the United States since at least 2015. (ECF No. 121, PageID.6329, ¶ 2).  Through internet websites, social media posts, telemarketing, and a host of sales agents, they claim to "improve consumers' credit scores by removing all negative items from their credit reports and adding credit building products." (*Id.*).  The FTC says these credit restoration measures are a sham.  And not only that, the entities apparently charge consumers prohibited advance fees to use these services without providing them the requisite disclosures under federal law. (*Id.*).

Aside from credit restoration, Youth Financial and FES also encourage consumers to become sales agents who (1) market their services to secondary consumers, and (2) recruit those secondary consumers to become sales agents themselves. (*Id.*, PageID.6329-30, ¶ 3).  Sales agent incentives run the gamut from assurances of exaggerated future commissions to discounts on credit repair products and services. (*Id.*, PageID.6349-61, ¶¶ 51-54, 56, 61-72).  The FTC labels

2

this aspect of the entities' operations an illegal pyramid scheme. (*Id.*, PageID.6357).

B. *Procedural History*

The FTC filed this lawsuit against Thompson, Youth Financial, FES, and other associated entities and individuals seeking a permanent injunction and monetary relief. (ECF No. 1). The amended complaint alleges that Thompson violated section 5(a) to the Federal Trade Commission Act, the Credit Repair Organizations Act, the Telemarketing Sales Rule, the Fair Credit Reporting Act, and the Graham-Leach-Bliley Act. (ECF No. 121, PageID.6361-82, ¶¶ 75-144).

Coincident to filing the initial complaint, the FTC moved *ex parte* for a temporary restraining order to, among other things, freeze Thompson's assets and appoint a receiver over Youth Financial and FES. (ECF No. 3). Although it initially granted the requested relief (ECF No. 10), the Court ultimately vacated the temporary restraining order and converted the receivership to a monitorship. (ECF No. 73, PageID.5466, Tr. 45:9-12; ECF No. 76).

Thompson now moves to dismiss the amended complaint, arguing that the FTC cannot sue him as Youth Financial's "owner, officer, director, or manager"

3

because the company is a nonprofit organization that is exempt from liability under the above statutes.[1]

III. <u>Legal Standards</u>

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).

IV. <u>Analysis</u>

    A. *The Federal Trade Commission Act*

The Federal Trade Commission Act (the "FTC Act") authorizes the FTC to "prevent persons, partnerships, or corporations, . . . from using . . . unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2). The

---

[1] Even if the Court were to grant the motion in its entirety, Thompson would remain a party defendant because the FTC plausibly alleges that (1) he was FES's "owner, officer, director, or manager," (2) FES is a for-profit entity, and (3) for-profit entities must comply with all the laws that FES purportedly violated. (ECF No. 121, PageID.6331, 6336-37, ¶¶ 7, 18).

Act defines "corporation" as "any company . . . which is organized to carry on business for *its own profit or that of its members*." *Id.* § 44 (emphasis added).

Thompson urges the adoption of a bright-line rule that would categorically preclude FTC enforcement actions against any organization accorded nonprofit status under the Internal Revenue Code and state laws. (ECF No. 129, PageID.6427-28). But federal precedents reject this approach.

No less an authority than the United States Supreme Court has held that nonprofit organizations may still fall within the FTC Act's purview when their "congeries of activities" confer "far more than *de minimis* or merely presumed economic benefits" upon the entity or its members. *California Dental Ass'n v. FTC*, 526 U.S. 756, 767 (1999). And other federal courts similarly require that "the jurisdictional inquiry" under the FTC Act evaluate "the substance of [the entity's] activities."[2] *Daniel Chapter One v. FTC*, 405 F. App'x 505, 505-06 (D.C. Cir. 2010); *see also FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 460 (D. Md.

---

[2] Michigan courts similarly evaluate whether an organization actually operates as a nonprofit to determine whether it is entitled to certain privileges. *See Hodgson v. William Beaumont Hospital*, 373 Mich. 184, 187 n.1 (1964) (stating that "the question of whether a hospital is maintained for the purpose of charity or for that of profit is to be determined, in case the hospital is incorporated, not only from its powers as defined in its charter but also from the manner in which it is conducted."); *see also Guardiola v. Oakwood Hosp.*, 200 Mich. App. 524, 532 (1993) (holding that the central elements for deciding whether an institution is entitled to charitable immunity are (1) "whether it has enjoyed any private gain," and (2) "whether it was formed under a statute specifically providing for charitable organizations.").

2004) (observing that "[c]ourts have consistently recognized that the [FTC] Act applies to 'corporations' organized for profit regardless of the form of their charter or statutory source.").

Endorsing a functional test (which the FTC proposes) over a categorical test (which Thompson proposes) makes sense too. After all, "[n]onprofit entities organized on behalf of for-profit members have the same capacity and derivatively, at least, the same incentives as for-profit organizations to engage in unfair methods of competition or unfair and deceptive acts." *California Dental*, 526 U.S. at 768. Nor did Congress "intend to provide a blanket exclusion of all nonprofit corporations, for it was also aware that corporations ostensibly organized not-for-profit" may function as "vehicles through which a pecuniary profit could be realized for themselves or their members." *Community Blood Bank v. FTC*, 405 F.2d 1011, 1017 (8th Cir. 1969); *see also FTC v. National Com. on Egg Nutrition*, 517 F.2d 485, 488 (7th Cir. 1975).

Turning to the amended complaint, the FTC asserts that:

- At all times relevant to this Complaint, acting alone or in concert with others, Youth Financial has marketed and sold credit repair services and investment opportunities to consumers throughout the United States; and

- At all times relevant to this Complaint, Youth Financial has carried on business for its own profit or that of its members.

(ECF No. 121, PageID.6334, ¶ 12). These allegations are alone sufficient to plausibly demonstrate that Youth Financial operates as a for-profit business within the FTC Act's jurisdiction and that Thompson, in his role as "owner, officer, director, or manager," may be held accountable for the organization's purported violations of the statute.[3]

    B.    *The Credit Repair Organizations Act*

The Credit Repair Organizations Act ("CROA") prohibits misrepresentations by or on behalf of credit repair organizations regarding the nature of their services. 15 U.S.C. § 1679b(a)(3)-(4). The Act defines a "credit repair organization" as:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

---

[3] Although Thompson does not directly challenge whether Youth Financial's operations are subject to the Telemarketing Sales Rule ("TSR"), the Court would apply this same analysis and conclude that it does. The FTC promulgated the TSR to implement the Telemarketing and Consumer Fraud and Abuse Prevention Act. 15 U.S.C. §§ 6101-08; *see also FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 635 (7th Cir. 2005). And "[t]he FTC's jurisdiction under the Telemarketing Act extends to the same extent as the FTC's jurisdiction under the FTC Act." *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 936 (C.D. Ill. 2014); *see also* 15 U.S.C. § 6105(b) (authorizing the FTC to enforce the TSR "with the same jurisdiction, powers, and duties" that it possesses under the FTC Act).

15 U.S.C. § 1679a(3)(A). Excluded from this classification is "any nonprofit organization which is exempt from taxation under section 501(c)(3)" of the Internal Revenue Code. *Id.* § 1679a(3)(B)(i).

Here too, Thompson reiterates his position that Youth Financial is exempt from CROA enforcement because it is organized as a section 501(c)(3) tax-exempt nonprofit. The issue is more nuanced than he conceives it.

To explore this question more fully, the Court must look to other circuits for guidance because the United States Court of Appeals for the Sixth Circuit has never addressed it. *See In re Spiech Farms, LLC*, 840 F. App'x 861, 867 (6th Cir. 2021) ("Since this issue is one of first impression in this circuit, we look to other circuits for guidance."). The First Circuit Court of Appeals' decision in *Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473 (1st Cir. 2005), is the most pertinent and instructive.

In *Zimmerman*, the plaintiffs sued a section 501(c)(3) tax-exempt nonprofit for violating the CROA. The district court dismissed the claim after concluding that the organization's section 501(c)(3) status *alone* exempted the business from the CROA's reach. *Id.* at 474. The court of appeals disagreed.

Reversing the district court, the First Circuit rejected the argument that "a credit repair organization must only have received section 501(c)(3) from the IRS to qualify for the exclusion" from CROA liability. *Id.* at 475. The court of appeals

8

instead held that a credit repair organization (1) "must actually operate as a nonprofit organization" *and* (2) qualify as a tax-exempt section 501(c)(3) entity to fall outside the CROA's ambit. *Id.* at 478. The First Circuit reasoned that the two-tiered framework would (1) advance the CROA's remedial goal of "protect[ing] the public from unfair or deceptive advertising and business practices by credit repair organizations," 15 U.S.C. § 1679(b)(2), and (2) thwart "unscrupulous credit repair organizations" from skirting the statute's protections. *Zimmerman*, 409 F.3d at 476-77. These grounds are sufficiently persuasive to warrant *Zimmerman*'s application in this case.

Focusing on *Zimmerman*'s first prong then – which assesses whether the entity actually operates as a nonprofit – the FTC alleges that "Youth Financial has carried on business for its own profit or that of its members." (ECF No. 121, PageID.6334, ¶ 12). And construing this single allegation in the FTC's favor, as the Court must, the amended complaint plausibly establishes that Youth Financial is not exempt from the CROA's coverage and that Thompson may be held liable for violating the statute as one of the company's executives.

Still, Thompson disputes this conclusion. Pointing to the district court's ruling in *Bahdouchi v. Third Eye, Inc.*, No. 04-72997, 2005 U.S. Dist. LEXIS 62861 (E.D. Mich. Jan. 21, 2005) he contends that the FTC lacks Article III standing to challenge Youth Financial's section 501(c)(3) designation because only

9

the Internal Revenue Service may revoke that status. (ECF No. 129, PageID.6439-40). Thompson, however, overlooks two important differences between the FTC's position in this lawsuit and the plaintiffs' in *Bahdouchi*.

*First*, unlike the *Bahdouchi* plaintiffs, the FTC is not challenging Youth Financial's section 501(c)(3) tax-exempt status. The agency exclusively contests whether Youth Financial "actually operate[s] as a nonprofit organization" under *Zimmerman*'s first prong. Once discovery is completed, the FTC may ultimately show that Youth Financial does in fact operate as a for-profit business – thereby subjecting it to the CROA's proscriptions – without ever challenging its section 501(c)(3) designation. And the FTC possesses the requisite standing to pursue this legal theory.

*Second*, *Bahdouchi* encountered significant headwinds from the outset. That's because the *Bahdouchi* Court followed the district court's opinion in *Zimmerman* that only the IRS has standing to challenge an organization's section 501(c)(3) status. *See Bahdouchi*, 2005 U.S. Dist. LEXIS 62861, at *11-12. But soon after *Bahdouchi*'s issuance, the First Circuit released its own decision reversing the district court and repudiating its views. *See Zimmerman*, 409 F.3d at 477-78 (rejecting the district court's rationale). So *Bahdouchi*'s precedential import is substantially diminished.

For all these reasons, the amended complaint plausibly establishes that Youth Financial is operating as a for-profit business. And, therefore, the CROA claim against Thompson is sufficient to withstand Rule 12(b)(6) dismissal.

C. *The Fair Credit Reporting Act*

The Fair Credit Reporting Act ("FCRA") prohibits a "person" from obtaining or using a consumer credit report without an authorized purpose that is certified "by a prospective user of the report." 15 U.S.C. § 1681b(f). The statute defines "persons" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Id.* § 1681a(b). And it authorizes the FTC to pursue enforcement actions against any "person that is subject to enforcement by the Federal Trade Commission pursuant to this subsection, *irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act*." *Id.* § 1681s(a)(1) (emphasis added).

Since Thompson highlights nothing in the FCRA's text or legislative history indicating that Congress intended to exempt nonprofit organizations and their executives from complying with the statute, the portion of Thompson's motion seeking to dismiss the FCRA claim is denied.

11

### D. The Gramm-Leach-Bliley Act

The Gramm-Leach-Bliley Act (the "GLB Act") prohibits "any person" from obtaining or attempting to obtain "customer information of a financial institution relating to another person" under false pretenses. 15 U.S.C. § 6821(a). Although the statute leaves the term "person" undefined, courts typically consult the Dictionary Act to ascertain Congress's meaning, "unless the context indicates otherwise." 1 U.S.C. §1; *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707 (2014).

According to the Dictionary Act the word "person" can mean "corporations" or "companies." 1 U.S.C. §1. The statute draws no distinction, though, between the for-profit and nonprofit versions of these entities. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1129 (10th Cir. 2013) (observing that the Dictionary Act does not distinguish between for-profit and nonprofit corporations).

What is more, the GLB Act vests the FTC with the same enforcement powers that it retains under the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 6822(a). And mirroring the FCRA, the FDCPA similarly authorizes the FTC to commence enforcement proceedings against "any person . . . *irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act.*" 15 U.S.C. § 1692l(a) (emphasis added). So when read together with the Dictionary Act, the GLB Act's plain

meaning indicates that the statute regulates both for-profit and nonprofit entities alike.

Insofar as Thompson asserts that Michigan law somehow limits the GLB Act's application to for-profit entities, the statutory text undercuts this notion. (ECF No. 129, PageID.6429-31).

The GLB Act preempts any state "statutes, regulations, orders, or interpretations" that "are inconsistent with [its] provisions." 15 U.S.C. § 6824(a); *see also Ass'n of Banks in Ins. v. Duryee*, 270 F.3d 397, 405 (6th Cir. 2001) (observing that the GLB Act "creates separate preemption standards for state laws dealing with the sale, solicitation or cross-marketing of insurance"). While states may enact broader protections than those the GLB Act already affords, they cannot narrow the statute's scope through state law. *Id.* § 6824(b). And since the GLB Act empowers the FTC to initiate enforcement proceedings against business entities, irrespective of whether they operate for pecuniary gain, Michigan cannot circumscribe that authority through its own provisions of state law.

Because neither the GLB Act's text nor its legislative history demonstrate that Congress exempted nonprofit organizations and their executives from following the statute, the portion of Thompson's motion seeking to dismiss the GLB Act claim is likewise denied.

### E. Thompson's Individual Liability

Thompson lastly insists that his status as an "unpaid volunteer officer" shields him from liability against the FTC's claims. (ECF No. 129, PageID.6417, 6421, 6424, 6438, 6439, 6441).

To plausibly establish its entitlement to injunctive relief against Thompson for Youth Financial's deceptive acts or practices, the FTC must allege that (1) Youth Financial violated section 5(a) of the FTC Act, (2) Thompson participated directly in Youth Financial's deceptive acts or practices, or had the authority to control them, and (3) Thompson knew or should have known about the alleged deceptive misrepresentations. *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 636 (6th Cir. 2014). To obtain monetary damages from Thompson, the FTC must proffer additional evidence "tending to show consumers actually relied on" Youth Financial's "deceptive acts or practices to their detriment." *Id.*; *see also FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005).[4]

---

[4] The same standard applies when the FTC seeks to obtain injunctive and monetary relief against individual defendants under the CROA, FCRA, and the GLB Act. *See* 15 U.S.C. § 1679h(b)(1) (stating that CROA violations "shall constitute an unfair or deceptive act or practice in commerce in violation of section 5(a) of the Federal Trade Commission Act."); 15 U.S.C. § 1681s(a)(1) (stating that FCRA violations "shall constitute an unfair or deceptive act or practice in commerce, in violation of section 5(a) of the Federal Trade Commission Act."); 15 U.S.C. § 6822(a) (stating that GLB Act violations "shall be enforced by the Federal Trade Commission in the same manner and with the same power and authority as the Commission has under the Fair Debt Collection Practices Act"); 15 U.S.C. §

The problem for Thompson is that neither the FTC Act, the CROA, the FCRA, nor the GLB Act condition individual liability upon the receipt of compensation from an infringing business entity. And there are no interpretive authorities supporting that contention. So whether Thompson ever received compensation as a Youth Financial executive is immaterial to the assessment of his own liability under these statutes. Accordingly,

IT IS ORDERED that Thompson's motion to dismiss the amended complaint (ECF No. 129) is denied.

**SO ORDERED.**

Dated: November 21, 2023
Detroit, Michigan

s/Bernard A. Friedman
Bernard A. Friedman
Senior United States District Judge

---

1692l(a) (stating that FDCPA violations "shall be deemed an unfair or deceptive act or practice in violation of [the FTC Act].").